```
                              ┌─────────────────────────────────┐
                              │            FILED                │
                              │                                 │
                              │          JUN 0 2 2008           │
                              │                                 │
                              │    CLERK, U.S. DISTRICT COURT   │
                              │  SOUTHERN DISTRICT OF CALIFORNIA│
                              │  BY                     DEPUTY  │
                              └─────────────────────────────────┘
```

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROLE ANN RUCKER,<br><br>                    Petitioner,<br><br>          v.<br><br>DEBORAH L. PATRICK, Warden,<br><br>                  Respondent. | Civil No.  07-0364 IEG (RBB)<br><br><br>**REPORT AND RECOMMENDATION RE:<br>GRANTING PETITION FOR WRIT OF<br>HABEAS CORPUS [DOC. NO. 1] AND<br>ORDER DENYING REQUEST FOR<br>EVIDENTIARY HEARING [DOC. NO.<br>6]** |

I.   **INTRODUCTION**

Carole Ann Rucker ("Rucker") a state prisoner represented by counsel, has filed a Petition for a Writ of Habeas Corpus ("Pet.") pursuant to 28 U.S.C. § 2254 challenging her San Diego Superior Court conviction in case number SCD167667 for attempted murder and exhibiting a firearm in the presence of a peace officer.  (Lodgment No. 1, Clerk's Tr., vol. 1, 248, Aug. 28, 2003.)  Rucker contends her federal constitutional rights were violated when the trial court denied her motion for a new trial without an evidentiary hearing, instructed the jury with California Jury Instructions: Criminal ("CALJIC") No. 2.50.02, admitted prejudicial propensity evidence, and instructed the jury it could use propensity evidence

-1-

07cv0364

1 | in determining her guilt.  (See Pet. 6, 9-12.)

2 | The Court has considered the Petition, the Memorandum of

3 | Points and Authorities in Support of the Petition, Respondent's

4 | Answer, the Memorandum of Points and Authorities in Support of the

5 | Answer, Petitioner's Traverse, and all the supporting documents

6 | submitted by the parties.  Based upon the documents and evidence

7 | presented in this case, and for the reasons set forth below, the

8 | Court recommends that the Petition be **GRANTED**.

9 | II.   **FACTUAL BACKGROUND**

10 | This Court gives deference to state court findings of fact and

11 | presumes them to be correct; Petitioner may rebut the presumption

12 | of correctness, but only by clear and convincing evidence.  28

13 | U.S.C.A. § 2254(e)(1)(West 2006); see also Parke v. Raley, 506 U.S.

14 | 20, 35-36 (1992) (holding findings of historical fact, including

15 | inferences properly drawn from such facts, are entitled to

16 | statutory presumption of correctness).

17 | The facts underlying Rucker's conviction and found by the

18 | state trial and appellate courts are presumed correct, and they are

19 | supported by the record.  Rucker was approximately fifty years old

20 | when she began dating the victim, Bert Watson.  (Lodgment No. 2,

21 | Rep.'s Tr., vol. 3, 539, 555-57, June 9, 2003.)  Petitioner and

22 | Watson dated from approximately July 2001 until April 2002.  (Id.

23 | at 557-58.)  Rucker became concerned when the relationship started

24 | to fail; she  had been looking for a relationship that would lead

25 | to marriage.  (Id. at 614-615.)

26 | On the morning of Memorial Day, May 27, 2002, Rucker went to

27 | Watson's condominium complex, saw him on his patio, and then left.

28 | (Id. at 656-57.)  She returned at about 1:00 p.m. and, while

07cv0364

1   watching his condominium, saw Watson leave with another woman.

2   (Id. at 659-60.)  Rucker waited for Watson to return.  When he did,

3   she went to his condominium, but when he answered the door, he said

4   it was not a good time.  (Id. at 661-62.)  According to Watson,

5   Rucker was upset and said, "'You don't know what I'm capable of.'"

6   (Lodgment No. 2, Rep.'s Tr., vol. 1, 101-02, June 4, 2003.)  Watson

7   convinced Rucker to go for a drive with him, and they drove to a

8   grocery store parking lot where they talked for about three hours

9   about many things, including her past failed relationships.  (Id.

10  at 101-04.)  He promised to call her the next day.  (Id. at 105.)

11       Watson called Rucker at work the next day, May 28, 2002, to

12  check on her and told her he would call her again the next day.

13  (Id.)  Rachel Hershkowitz testified that on May 28 or 29, 2002,

14  Rucker called her to talk about Rucker's failing relationship with

15  Watson, and Rucker said she wanted to kill herself.  (Lodgment No.

16  2, Rep.'s Tr., vol. 2, 352, 361-63, June 6, 2003.)  Hershkowitz, a

17  close friend of Watson, then called him, and said, "'This psycho

18  Carole called me again.  You really need to take care of this.  She

19  wants to kill herself over you.'"  (Id. at 364.)  Watson reportedly

20  said he would "take care of it."  (Id.)  He called Rucker at her

21  office.  (Lodgment No. 2, Rep.'s Tr., vol. 1, 108.)  During their

22  conversation, she asked if she could come over later that evening

23  to get some shoes that were at his condominium, and Watson agreed.

24  (Id.)  Rucker came over after work, with her handgun in her purse.

25  (Lodgment No. 2, Rep.'s Tr., vol. 3, 676-77.)  She testified that

26  she carried the gun when she went to the gym and was planning to go

27  to the gym after seeing Watson.  (Id. at 676-78.)

28  //

1    While Rucker was at Watson's condominium, she asked for a

2  glass of wine, which she drank quickly.  (Lodgment No. 2, Rep.'s

3  Tr., vol. 1, 113-14.)  Watson gave her two more glasses of wine.

4  (Id. at 114-15.)  Rucker then announced that she would have to stay

5  for dinner because if she left at that time, she would get pulled

6  over for drunk driving, and Watson would be liable.  (Id. at 115.)

7  As Watson thawed some frozen shrimp to eat, Rucker put her arm

8  around his neck, nuzzled him, and said, "Take me like a man."  (Id.

9  at 116.)  They went to the bedroom and started to engage in sex,

10  during which Watson asked, "Can you take it [like] a woman?"  (Id.

11  at 117.)  Suddenly, Rucker began to cry and said, "You shouldn't

12  have said that."  (Id.)

13    Watson testified that he did not understand her reaction

14  because she had not indicated he was hurting her or that sex was

15  uncomfortable, but he stopped.  (Id. at 117-18.)  Rucker got up and

16  got dressed; she left the bedroom, got her purse, and pulled out

17  her gun.  (Lodgment No. 2, Rep.'s Tr., vol. 3, 685-86.)  Petitioner

18  shot Watson once or twice as he walked down the hallway; she fired

19  more shots at him as he was leaving and followed him outside.  (Id.

20  at 689-91.)  Rucker put the gun in her mouth and pulled the

21  trigger, but she had fired all six bullets into Watson's body, so

22  the gun did not discharge.  (Lodgment No. 2, Rep.'s Tr., vol. 1,

23  123.)  She attempted to shoot herself once more, and the gun again

24  did not discharge.  (Id.)  She then drove home to get more bullets,

25  so she could shoot herself.  (Lodgment No. 2, Rep.'s Tr., vol. 3,

26  695.)

27  //

28  //

1   San Diego Police Officer Jeffrey Wuehler testified that
2   several police officers followed Rucker to her apartment complex,
3   where she parked in a parking stall. (Lodgment No. 2, Rep.'s Tr.,
4   vol. 2, 421-23, June 6, 2003.) She got out of her car and pointed
5   her gun at Officer Wuehler. (Id. at 426.) Several officers fired
6   at Rucker, and she fell to the ground and dropped the weapon. (Id.
7   at 427.)

8   According to Petitioner, on the day of the shooting, May 29,
9   2002, she intended to go to Watson's condominium to get her shoes
10  and felt no ill will or hatred toward him. (Lodgment No. 2, Rep.'s
11  Tr., vol. 3, 635, 674-76.) She testified that Watson was cordial,
12  invited her inside, and offered her some wine; "[i]t seemed like he
13  wanted to make a social visit out of this." (Id. at 625-26.)
14  Rucker admitted that she told Watson to "take her like a man," but
15  he hurt her during sex and did not stop when she told him it was
16  hurting her. (Id. at 628-629.) Rucker did not remember taking her
17  gun out of her purse, but she recalled having the gun in her hand,
18  pointing it at Watson, and firing a couple of shots. (Id. at 630.)

19  A forensic alcohol consultant testified that Petitioner's
20  blood alcohol level was .11 about an hour and a half after the
21  shooting, a level at which a person can experience memory loss,
22  different behaviors, and impaired judgment. (Lodgment No. 2,
23  Rep.'s Tr., vol. 3, 483-85, 497-98, 506, June 9, 2003.) Rucker
24  also presented expert psychiatric testimony indicating that she
25  suffered from a borderline personality disorder and chronic
26  depression; when she shot Watson, she was in a disassociative
27  state; and when she went to his house, she was not angry at Watson.
28  (Lodgment No. 2, Rep.'s Tr., vol. 4, 784-85, 792-93, 799-802, 805,

1    June 11, 2003.)

2        The jury also heard evidence about prior domestic violence
3    involving Petitioner and a man she had been seeing.  From 1996 to
4    1998, Rucker was dating David Yu.  (Lodgment No. 2, Rep.'s Tr.,
5    vol. 3, 585.)  She was very serious about Yu, and when he broke up
6    with her, she showed up at his apartment.  (Id. at 591-93.)  Yu
7    told Rucker that he did not have time to talk, at which point she
8    took out a loaded handgun and said, "'Please let me in.  You know I
9    know how to use this.'"  (Lodgment No. 2, Rep.'s Tr., vol. 4, 828-
10   29, June 11, 2003.)  Yu let her into his home, was able to calm her
11   down, and got Rucker to hand the gun to him.  (Id. at 829-30.)
12   After approximately fifteen minutes, he gave the gun back to her,
13   and she left.  (Id.)

14       Over the next two years, Rucker harassed Yu by putting paint
15   on his car, super-gluing his car door locks, taking a windshield
16   wiper from his car, and painting an obscenity on the sidewalk
17   outside a friend's home where he had been attending a party.  (Id.
18   at 830-32.)  Yu asked Rucker to stop, but she didn't.  (Id. at 831-
19   33.)  He testified that in July 2000, Rucker chased him and a woman
20   he was dating on the freeway.  (Id. at 833.)  Rucker followed Yu as
21   he pulled into a Target parking lot, where Yu confronted her and
22   told her to leave him alone.  (Id.)  She called Yu a few days later
23   and stated that if she couldn't have him, no one else could, which
24   prompted Yu to call the police and obtain a restraining order
25   against Rucker.  (Id. at 834-36.)  After he obtained the order, the
26   harassment stopped.  (Id. at 850.)

27   //

28   //

III. <u>PROCEDURAL BACKGROUND</u>

On October 4, 2002, the San Diego County District Attorney's Office filed an information charging Rucker with one count of attempted murder (Cal. Penal Code §§ 664, 187(a)) with the following allegations:  the attempted murder was deliberate and premeditated (Cal. Penal Code § 189); Rucker personally discharged a handgun causing great bodily injury (Cal. Penal Code § 12022.53(d)); she personally used a firearm (Cal. Penal Code § 12022.5(a)(1); Rucker personally inflicted great bodily injury on the victim (Cal. Penal Code § 12022.7(e)); and she personally inflicted great bodily injury causing permanent paralysis (Cal. Penal Code § 12022.7(b)).  (Lodgment No. 1, Clerk's Tr., vol. 1, 01-02, Oct. 4, 2002.)  Counts two through five charged Rucker with exhibiting a firearm in the presence of four different officers (Cal. Penal Code § 417(c)), and count six charged her with evading an officer (Cal. Veh. Code § 2800.1).  (<u>Id.</u> at 02-03.)

On June 3, 2003 the jury trial commenced.  (<u>Id.</u> at 263, June 3, 2003.)  The trial court granted a motion for judgment of acquittal pursuant to Penal Code section 1118.1 as to counts three, four, and five, each allegation of exhibiting a firearm in the presence of an officer, count six, charging Rucker with evading an officer, and the allegation in count one that Rucker inflicted great bodily injury with permanent paralysis.  (<u>Id.</u> at 274, June 11, 2003.)  On June 17, 2003, the jury convicted Rucker of one count of attempted murder and one count of exhibiting a firearm in the presence of a peace officer.  (<u>Id.</u> at 281-82, June 17, 2003.)  The jury also found that she personally discharged a firearm causing great bodily injury, personally used a firearm, and

-7-

1   personally inflicted great bodily injury.  (<u>Id.</u>)

2      Rucker filed a motion for new trial on August 4, 2003.  (<u>Id.</u>

3   at 181, Aug. 4, 2003.)  The motion was accompanied by the

4   declaration of the jury foreperson, Bruce Robinson, and described

5   several instances of alleged juror misconduct.  (<u>Id.</u> at 190-91.)

6   The foreperson, among other things, described jurors two and nine

7   discussing how they responded to being physically attacked and

8   raped.  (<u>Id.</u> at 190.)  Robinson also disclosed that he had looked

9   up Petitioner on the internet and read a newspaper article about

10  the trial.  (<u>Id.</u> at 191.)

11     The People filed an opposition to the new trial motion.  (<u>Id.</u>

12  at 173, Aug. 4, 2003.)  A hearing was held on August 5, 2003, and

13  the court continued the motion and Rucker's sentencing.  (Lodgment

14  No. 2, Rep.'s Tr., vol. 5, 1018-20, 1024, Aug. 5, 2003.)  The

15  prosecution filed a supplemental opposition to the motion for a new

16  trial on August 21, 2003.  (Lodgment No. 1, Clerk's Tr., vol. 1,

17  214-17, Aug. 21, 2003.)  Declarations from four other jurors were

18  filed on August 26, 2003.  (<u>Id.</u> at 226-35, Aug. 26, 2007.)

19     The court held the continued hearing on August 27, 2003.

20  (Lodgment No. 2, Rep.'s Tr., vol. 5, 1026, Aug. 27, 2003.)  The

21  foreperson and his attorney attended the hearing.  (<u>Id.</u> at 1026-

22  27.)  Counsel for the foreperson stated that his client "would be

23  asserting his Fifth Amendment privilege as to any questions

24  regarding his participation as a juror in this trial."  (<u>Id.</u> at

25  1027.)  The court recognized the blanket assertion of privilege,

26  heard argument on the motion for a new trial, and considered all

27  the declarations.  (<u>Id.</u> at 1026-47.)  The trial judge then denied

28  the motion.  (<u>Id.</u> at 1047.)

1    Rucker appealed her conviction to the California Court of

2  Appeal.  (See Lodgment No. 4, Appellant's Opening Brief, People v.

3  Rucker, No. D043159 (Cal. Ct. App. Feb. 15, 2005.)  The state court

4  affirmed the judgment on February 15, 2005.  (Lodgment No. 7,

5  People v. Rucker, No. D043159, slip op. (Cal. Ct. App. Feb. 15,

6  2005.)  Next, Rucker filed a petition for rehearing.  (Lodgment No.

7  8, Petition for Rehearing, People v. Rucker, No. D043159 (Cal. Ct.

8  App. Mar. 3, 2005).)  On March 3, 2005, the California Court of

9  Appeal issued an order modifying the opinion and denying rehearing

10 with no change in the judgment.[1]  (Lodgment No. 9, People v.

11 Rucker, No. D043159, order (Cal. Ct. App. Mar. 3, 2005).)  Rucker

12 filed a petition for review in the California Supreme Court which

13 was denied without citation or comment.  (Lodgment No. 10, Petition

14 for Review, People v. Rucker, No. S132431 (Cal. May. 18, 2005);

15 Lodgment No. 11, People v. Rucker, No. S132431, order (Cal. May 18,

16 2005).)

17    On July 26, 2006, Rucker submitted her petition for writ of

18 habeas corpus with the California Supreme Court, which was denied

19 without citation or comment.  (Lodgment No. 12, Petition for Writ

20 of Habeas Corpus, In re Rucker, No. S145400 (Cal. Feb. 14, 2007);

21 Lodgment No. 13, In re Rucker, No. S145400, order (Cal. Feb. 14,

22 2007).)

23    On February 26, 2007, Rucker filed her Petition for Writ of

24 Habeas Corpus in this Court [doc. no. 1].  The Respondent, Warden

25 Patrick, filed her Answer on May 7, 2007 [doc. no. 5], and Rucker

26

27    [1] The only modification ordered was changing the period of time of "six to
28 eight months" in the fourth sentence of the second full paragraph on page 13 to
"approximately nine months." (Lodgment No. 9, People v. Rucker, No. D043159, order
(Cal. Ct. App. Mar. 3, 2005))

1  filed a Traverse on June 28, 2007 [doc. no. 6].

2  IV.  **DISCUSSION**

3      A.  **Scope of Review**

4      Title 28, United States Code, § 2254(a), sets forth the

5  following scope of review for federal habeas corpus claims:

6          The Supreme Court, a Justice thereof, a circuit
           judge, or a district court shall entertain an application
7          for a writ of habeas corpus in behalf of a person in
           custody pursuant to the judgment of a State court only on
8          the ground that he is in custody in <u>violation of the
           Constitution or laws or treaties of the United States.</u>
9

10 28 U.S.C.A. § 2254(a)(West 2006) (emphasis added).

11     The current Petition is governed by the Anti-Terrorism and

12 Effective Death Penalty Act of 1996 ("AEDPA").  <u>See</u> <u>Lindh v.</u>

13 <u>Murphy</u>, 521 U.S. 320 (1997).  As amended, 28 U.S.C. § 2254(d)

14 reads:

15         (d) An application for a writ of habeas corpus on
           behalf of a person in custody pursuant to the judgment of
16         a State court shall not be granted with respect to any
           claim that was <u>adjudicated on the merits</u> in State court
17         proceedings unless the adjudication of the claim –

18             (1) resulted in a decision that was contrary
               to, or involved an unreasonable application of,
19             clearly established Federal law, as determined
               by the Supreme Court of the United States; or
20
               (2) resulted in a decision that was based on an
21             unreasonable determination of the facts in
               light of the evidence presented in the State
22             court proceeding.

23 28 U.S.C.A. § 2254(d)(1)-(2) (West 2006) (emphasis added).

24     Rucker argues that her Petition was timely filed.  (Mem. P. &

25 A. Supp. Pet. 8-9.)  The Respondent does not contest its

26 timeliness.  (<u>See</u> Answer 1-4.)  Accordingly, because the Petition

27 was filed after AEDPA's effective date, and her claims were

28 adjudicated on their merits in the state courts, Rucker must

-10-

07cv0364

1  satisfy either § 2254(d)(1) or § 2254(d)(2) to obtain habeas

2  relief.  See Williams v. Taylor, 529 U.S. 362, 403 (2000).

3      The Supreme Court interprets § 2254(d)(1) as follows:

4      Under the "contrary to" clause, a federal habeas court
       may grant the writ if the state court arrives at a
5      conclusion opposite to that reached by this Court on a
       question of law or if the state court decides a case
6      differently than this Court has on a set of materially
       indistinguishable facts.  Under the "unreasonable
7      application" clause, a federal habeas court may grant the
       writ if the state court identifies the correct governing
8      legal principle from this Court's decisions but
       unreasonably applies that principle to the facts of the
9      prisoner's case.

10 Williams, id. at 412-13; see also Lockyer v. Andrade, 538 U.S. 63,

11 73-74 (2003).

12      Where there is no reasoned decision from the state's highest

13 court, the Court "looks through" to the underlying appellate court

14 decision.  Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991).  If the

15 dispositive state court order "supplies no reasoned decision,"

16 federal habeas courts must conduct an independent review of the

17 record to determine whether the state court's decision is contrary

18 to, or an unreasonable application of, clearly established Supreme

19 Court law.  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003)

20 (citing Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000)).  A

21 state court, however, need not cite Supreme Court precedent when

22 resolving a habeas corpus claim.  Early v. Packer, 537 U.S. 3, 8

23 (2002).  "[S]o long as neither the reasoning nor the result of the

24 state-court decision contradicts [Supreme Court precedent,]" id.,

25 the state court decision will not be "contrary to" clearly

26 established federal law.  Id.

27 //

28 //

-11-

**B.   Analysis**

In her first ground for habeas relief, Rucker raises four subclaims:   The trial court violated her federal due process rights by (a) denying her new trial motion without a further hearing,[2] (b) coercing the foreperson to exercise his Fifth Amendment privilege not to testify, (c) erroneously permitting him to make a blanket claim of privilege, and (d) denying the motion for a new trial in the face of misconduct by two female jurors.   (Pet. 6.)   In grounds two through four, she asserts the following claims:   The trial court instructed the jury with CALJIC 2.50.02, which violated Petitioner's due process rights because it allowed the jury to draw an illogical permissive inference of guilt (ground two); the trial court violated Petitioner's federal constitutional rights when it admitted evidence of a prior domestic violence incident to prove she had a disposition to commit the crime charged (ground three); and the trial court violated Rucker's federal due process rights when it gave CALJIC No. 2.50.02, because it permitted the jury to convict based on evidence that Petitioner committed an uncharged act of domestic violence (ground four).   (Id. at 9, 10, 11-12.)

Respondent argues that the state courts' denial of claims one and two was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.   (Answer 3.)   The warden also contends that grounds three and four "are not cognizable in a federal habeas corpus proceeding."   (Id. at 4.)

//

---

[2]Although Rucker's petition alleges that the trial court failed to conduct a "further hearing," (Pet. 6), the memorandum in support of her Petition is more specific and complains about the failure to conduct an "evidentiary hearing."   (Mem. P. & A. Supp. Pet. 9.)

-12-

1          **1.**   **The New Trial Motion**

2     In claim one, Petitioner makes several arguments that the

3 trial court violated her federal due process rights by denying her

4 motion for a new trial.  (See Mem. P. & A. Supp. Pet. 9.)

5          **a.**   **The Underlying Facts and Trial Court Decision**

6     In support of her motion, Rucker attached a declaration from

7 the jury foreperson which stated, in part, that during

8 deliberations jurors two and nine talked about their personal

9 experiences of being assaulted and raped.  (Lodgment No. 1, Clerk's

10 Tr., vol. 1, 190.)  According to juror Robinson, one of these

11 jurors was antagonistic toward Rucker, and the other was

12 inattentive.  (Id.)  The foreperson's declaration further stated:

13         Prior to the verdict, I logged on to the Internet
and went to the Google website whereupon I looked up the

14     name of the defendant, Carole Ann Rucker.  I read what
information was available.  On the second day of

15     testimony, I noticed the San Diego Union-Tribune
headline, "She Shot Him 4 Times But Was It Murderous

16     Intent?" and read the article.  The headline seemed
biased and affected me negatively.

17

18 (Id. at 191.)

19     The People opposed the motion for a new trial and filed

20 declarations from four jurors which contradicted the foreperson's

21 declaration.  (Id. at 226-35.)  In addition, the People submitted a

22 declaration from a San Diego County District Attorney's Office

23 investigator, dated August 26, 2003, which stated that juror

24 Robinson visited Rucker in prison on June 22, 2003, (five days

25 after the jury verdict, and one day before the foreperson executed

26 his declaration), and on July 20, 2003 (approximately two weeks

27 before the original sentencing hearing.)  (Id. at 223-24, Aug. 26,

28 2003.)

1    A hearing on Rucker's motion for a new trial was set for

2 August 5, 2003.  (See id. at 173, 284.)  At the hearing, the trial

3 judge noted that the jury had been admonished not to read

4 newspapers during the trial; therefore, if the assertions in the

5 foreperson's declaration were true, he had admitted being in

6 contempt and "should be prosecuted."  (Lodgment No. 2, Rep.'s Tr.,

7 vol. 5, 1019.)  The trial judge indicated that the foreperson

8 should consult with an attorney before any hearing takes place, and

9 the motion was continued to August 27, 2003.  (Id. at 1019, 1024.)

10    At the continued hearing, the trial court had before it the

11 declarations of the foreperson, an investigator, and four trial

12 jurors; the foreperson was present with an attorney, who announced

13 that the foreperson intended to assert his Fifth Amendment

14 privilege to any questions concerning his "participation as a juror

15 in this trial."  (Id. at 1026-27.)  The trial judge stated that he

16 would not require foreperson Robinson to answer any questions.

17 (Id. at 1027.)  No additional evidence was introduced, and no

18 request for time to gather other evidence was made.  After the

19 trial judge heard arguments, he found that the foreperson was not

20 credible and denied Rucker's motion for a new trial.  (Id. at 1035-

21 36, 1044, 1047.)

22          **b.**   **The Presumption of Prejudice**

23    Petitioner argues that the trial court was required to presume

24 that the foreperson and two female jurors committed prejudicial

25 misconduct, and it could not resolve the issue without holding an

26 "evidentiary hearing" into the allegations, citing Mattox v. United

27 States, 146 U.S. 140 (1892), and its progeny.  (See Mem. P. & A.

28 Supp. Pet. 9, 13.)  She asserts that the court of appeal violated

1  her due process rights because it misapplied <u>Mattox</u> and affirmed

2  the denial of her new trial motion without an evidentiary hearing.

3  (<u>Id.</u> at 13.)   Rucker further contends that the trial court could

4  not determine the foreperson's credibility without conducting the

5  hearing.   (<u>Id.</u>)   She appears to be arguing that an evidentiary

6  hearing with live witnesses was required.   In addition, she claims

7  that the court of appeal's alternate holding unreasonably applies

8  the presumption of prejudice test because it fails to address the

9  internet research conducted by the foreperson.   (<u>Id.</u> at 12.)

10      Respondent counters that the appellate court correctly

11  found there was substantial evidence to support the trial court's

12  conclusion that the foreperson was not credible.   (Mem. P. & A.

13  Supp. Answer 12.)   That determination, according to the court of

14  appeal, obviated the need for a further hearing and application of

15  the presumption of prejudice test to the juror misconduct

16  allegations.   (<u>See</u> Lodgment No. 7, <u>People v. Rucker</u>, No. D043159,

17  slip op. at 22.)

18              c.   <u>The Admissibility of Juror Declarations</u>

19      A motion for a new trial does not open the door to the jury

20  room for all to see the deliberations of the jury.   "[Jurors] may

21  not be questioned about the deliberative process or subjective

22  effects of extraneous information, nor can such information be

23  considered by the trial or appellate courts."   <u>United States v.</u>

24  <u>Bagnariol</u>, 665 F.2d 877, 884-85 (9th Cir. 1981).   "Rather, the

25  trial court's factual inquiry is limited to determining the extent,

26  if at all, to which jurors saw or discussed the extrinsic

27  evidence."   <u>Jeffries v. Blodgett</u>, 5 F.3d 1180, 1191 (9th Cir.

28  1993)(quoting <u>Dickson v. Sullivan</u>, 849 F.2d 403, 406 (9th Cir.

-15-

1  1988)).

2      In <u>Jeffries</u>, the Ninth Circuit indicated that the district

3  court should not have considered jurors' subjective statements that

4  an extraneous remark about the defendant "was not a factor in

5  reaching their decision."  <u>Id.</u> at 1191.  "Testimony as to the

6  subjective effects of extraneous information is outside the

7  relevant scope of inquiry of a reviewing court."  <u>Id.</u>

8          [B]ecause Rule 606(b) [of the Federal Rules of Evidence]
           precludes the district court from investigating the
9          subjective effects of any extrinsic material on the
           jurors, whether such effects might be shown to affirm or
10         negate the conclusion of actual prejudice, a presumption
           of prejudice is created and the burden is on the
11         government to prove harmlessness.

12  <u>United States v. Klein</u>, 93 F.3d 698, 704 (10th Cir. 1996)(citing

13  <u>United States v. Bassler</u>, 651 F.2d 600, 603 (8th Cir. 1981); <u>accord</u>

14  <u>Pyles v. Johnson</u>, 136 F.3d 986, 991 (5th Cir. 1998).

15      The foreperson claims he consulted outside sources during the

16  trial:  He did an internet search on Rucker and read what was

17  available and a newspaper article about the case.  (Lodgment No. 1,

18  Clerk's Tr., vol. 1, 191.)  According to juror Robinson, he read

19  the article from the Union-Tribune; the "headline seemed biased and

20  affected me negatively."  (<u>Id.</u>)  The foreperson's claimed reaction

21  to the newspaper article is not admissible evidence and is not a

22  subject for this Court's consideration.

23      Rule 606(b) of the Federal Rules of Evidence provides:

24         [A] juror may not testify as to any matter or
           statement occurring during the course of the jury's
25         deliberations or to the effect of anything upon that or
           any other juror's mind or emotions as influencing the
26         juror to assent to or dissent from the verdict or
           indictment or concerning the juror's mental processes in
27         connection therewith.  But a juror may testify about (1)
           whether extraneous prejudicial information was improperly
28         brought to the jury's attention, (2) whether any outside
           influence was improperly brought to bear upon any juror,

-16-

1    or (3) whether there was a mistake in entering the
     verdict onto the verdict form.  A juror's affidavit or
2    evidence of any statement by the juror may not be
     received on a matter about which the juror would be
3    precluded from testifying.

4

5    Fed. R. Evid. 606(b).  "[J]uror testimony about the subjective

6    effect of evidence on any of the particular jurors . . . [is

7    something the Court] may not consider."  Estrada v. Scribner, 512

8    F.3d 1227, 1237 (9th Cir. 2008).

9        Rucker acknowledges that an evidentiary hearing is not

10   required where it is possible to "conclusively" decide the

11   credibility question based on "documentary testimony and evidence

12   in the record."  (Mem. P. & A. Supp. Pet. 13 (citing Watts v.

13   United States, 841 F.2d 275, 277 (9th Cir. 1988) (finding an

14   evidentiary hearing unnecessary in a § 2255 case)).)  Petitioner's

15   new trial motion relied on the allegations of jury misconduct

16   contained in the foreperson's declaration.

17       The appellate court considered the foreperson's declaration

18   describing Robinson's impermissible independent investigation and

19   the articles he read on the internet and in the Union-Tribune.

20   (Lodgment No. 7, People v. Rucker, No. D043159, slip op. at 20; see

21   also Lodgment No. 1, Clerk's Tr., vol. 1, 190-91).  The People

22   filed declarations of four jurors which disputed statements in the

23   foreperson's declaration.[3]  (Lodgment No. 1, Clerk's Tr., vol. 1,

24   _____

25       [3]  The declarations of jurors Deirdre Weed and Kathleen Kerns in the
     record are unsigned but were attached as exhibits to the People's Opposition
26   to Defendant's Motion for New Trial.  (Lodgment No. 1, Clerk's Tr., vol. 1,
     214-16, 231-35.)  The opposition stated, however, that signed declarations
27   would be filed with the court on the day of the hearing.  (Id. at 216.)  The
     record does not reflect whether that occurred.  (Lodgment No. 5, Rep.'s Tr.,
28   vol. 5, 286.)  Nevertheless, because Petitioner has not argued that the Weed
     and Kerns declarations were not signed, this Court presumes that the signed
     declarations were presented to the trial court as represented by the deputy
     district attorney.

1   226-35.)  The declaration of an investigator documented the

2   foreperson's visits to Rucker in jail on June 22, 2003, and on July

3   20, 2003.  (<u>Id.</u> at 223-25.)  Juror Carrick and the trial court

4   noted that Robinson initially refused to deliberate.  (<u>See</u> <u>id.</u> at

5   227-28; Lodgment No. 2, Rep.'s Tr. vol. 5, 1032-36.)  The court

6   expressed other misgivings about the foreperson.  (Lodgment No. 2,

7   Rep.'s Tr., vol. 5, 1019-20); <u>see</u> <u>Watts</u>, 841 F.2d at 277 (stating

8   that judges may supplement the evidence with their notes and

9   recollections of hearings).  Based upon this record, the appellate

10  court affirmed the trial judge's finding that there was no

11  misconduct because the foreperson's allegations were not credible.

12  (Lodgment No. 7, <u>People v. Rucker</u>, No. D043159, slip op. at 22.)

13  Because the foreperson did not introduce extraneous information

14  into the deliberations, there was no possibility that the material

15  affected the verdict of the other jurors, and there was no need to

16  apply the presumption of prejudice.  <u>See</u> <u>Sea Hawk Seafoods, Inc. v.</u>

17  <u>Alyeska Pipeline Service Co.</u>, 206 F.3d 900, 906 (9th Cir. 2000).

18          **d.    A Further Evidentiary Hearing on the Misconduct**

19                    **of the Foreperson**

20      Petitioner argues that the trial court should have presumed

21  the foreperson's conduct was prejudicial and held an evidentiary

22  hearing, rather than simply concluding that he was not credible and

23  denying her motion for a new trial on that basis.  (Mem. P. & A.

24  Supp. Pet. 13.)

25      Rucker presented her claim to the California Supreme Court in

26  a petition for review which was silently denied.  (Lodgment No. 10,

27  Petition for Review at 17, <u>People v. Rucker</u>, No. S132431; Lodgment

28  No. 11, <u>People v. Rucker</u>, No. S132431, order.)  Thus, because there

1  was a summary denial by the state's highest court, this Court must

2  "look through" to the last reasoned state court opinion, the

3  appellate court decision, as the basis for its analysis.  <u>Ylst</u>, 501

4  U.S. at 801-06; <u>Williams</u>, 529 U.S. at 412-13.

5      In denying the claim, the court of appeal stated:

6          Rucker is wrong that a presumption of prejudice
        arose here.  While it is true a presumption of prejudice
7        arises when a juror reads an article about the case
        during the trial, that presumption arises only if the
8        juror is found credible, that is, if the court believes
        the juror read a newspaper article.  Here, the court
9        found the jury foreperson was not credible.  Its decision
        was amply supported by the declarations of the other
10       jurors who disputed the foreperson's version of what had
        occurred, by his recalcitrance in the jury room, by the
11       foreperson's visits to Rucker in jail, and by the court's
        own observations of the foreperson.

12

13          .   .   .   .

14          In sum, no reversal is merited on the basis juror
        misconduct occurred.

15  (Lodgment No. 7, <u>People v. Rucker</u>, No. D043159, slip op. at 22-23.)

16  With deference to the California state courts, this Court will

17  consider Rucker's claim of juror misconduct.

18      The Ninth Circuit has explained that even "[i]f only one juror

19  was unduly biased or improperly influenced, [the defendant] was

20  deprived of his [S]ixth [A]mendment right to an impartial panel."

21  <u>Dickson v. Sullivan</u>, 849 F.2d at 408; <u>see</u> <u>Parker v. Gladden</u>, 385

22  U.S. 363, 366 (1966)(stating that petitioner was entitled to be

23  tried by twelve "impartial and unprejudiced jurors[]").

24      More recently, the Ninth Circuit interpreted Supreme Court

25  case law as creating a "flexible rule" for analyzing juror exposure

26  to extraneous information.  <u>Tracey v. Palmateer</u>, 341 F.3d 1037,

27  1044 (9th Cir. 2003) (discussing <u>Smith v. Phillips</u>, 455 U.S. 209

28  (1982), and <u>Remmer v. United States</u>, 347 U.S. 227 (1954)).

-19-

1  Similarly, the Supreme Court has not imposed on the courts any sua

2  sponte obligation to hold a hearing to investigate potential juror

3  bias.  Sims v. Rowland, 414 F.3d 1148, 1153 (9th Cir. 2005).

4  Instead, courts should "fashion a responsible procedure for

5  ascertaining whether misconduct actually occurred and, if so,

6  whether it was prejudicial."  United States v. Matta-Ballesteros,

7  71 F.3d 754, 766 n.9 (9th Cir. 1995)  (discussing claim that jurors

8  had access to extraneous information during deliberations).

9      "'An evidentiary hearing is not mandated every time there is

10  an allegation of juror misconduct or bias.  Rather, in determining

11  whether a hearing must be held, the court must consider the content

12  of the allegations, the seriousness of the alleged misconduct or

13  bias, and the credibility of the source.'"  United States v. Saya,

14  247 F.3d 929, 934-35 (9th Cir. 2001) (quoting United States v.

15  Angulo, 4 F.3d 843, 847 (9th Cir. 1993).  In essence, Rucker argues

16  that the trial court's credibility determination was premature; it

17  should have applied the presumption of prejudice and conducted an

18  evidentiary hearing to allow the prosecution to rebut the

19  presumption.  (Mem. P. & A. Supp. Pet. 13.)

20                  **The Union-Tribune Article**

21      Assuming, arguendo, that the trial court erred in not applying

22  the presumption of prejudice to foreperson Robinson's conduct, the

23  court of appeal found that the presumption was rebutted by the

24  content of the newspaper article the foreperson claimed to have

25  read.  (Lodgment No. 7, People v. Rucker, No. D043159, slip op. at

26  22-23.)  It concluded that Rucker suffered no prejudice because the

27  extraneous evidence allegedly consulted by Robinson was not

28  material.  (Id.)  While a presumption of prejudice arises where

-20-

1    there are allegations of intentional jury tampering, contact or

2    communication, the presumption is not conclusive where it is

3    alleged that jurors consulted extraneous sources which were not

4    material to the guilt or innocence of the defendant.  See United

5    States v. Bagnariol, 665 F.2d at 887; see generally Remmer v.

6    United States, 347 U.S. at 229; Mattox, 146 U.S. at 148-50.

7         Three of the four jurors who provided declarations in response

8    to Rucker's motion for a new trial stated that the foreperson never

9    mentioned doing internet research or reading a news article about

10   the case.  (Lodgment No. 1, Clerk's Tr., vol. 1, 227, 232, 234.)

11   The fourth recalled Robinson saying he picked up a newspaper, saw

12   the story, and asked his son to keep it until the deliberations

13   were over, but he said nothing about an internet search.  (Id. at

14   230.)

15        Rucker relies on Mattox and its progeny to support her claim

16   that the state courts committed a constitutional error by not

17   presuming that the allegations of juror misconduct were

18   prejudicial.  Petitioner's reliance on Mattox and subsequent cases

19   is misplaced.  In Mattox, the United States Supreme Court

20   overturned a murder conviction on Sixth Amendment grounds based in

21   part on evidence that during deliberations, the bailiff told the

22   jury that the defendant had murdered two other persons.  See

23   Mattox, 146 U.S. at 151.  The Court held that "[p]rivate

24   communications, possibly prejudicial, between jurors and third

25   persons, or witnesses, or the officer in charge, are absolutely

26   forbidden, and invalidate the verdict, at least unless their

27   harmlessness is made to appear."  Id. at 150.

28   //

1    Subsequently, the Supreme Court, in <u>Remmer</u>, 347 U.S. 227,
2    refined the contours of the presumption of prejudice which arises
3    in the context of contact or tampering with a juror.  The Court
4    stated that the "presumption is not conclusive, but the burden
5    rests heavily upon the government to establish, after notice to and
6    hearing of the defendant, that such contact with the juror was
7    harmless to the defendant."  <u>Id.</u> at 229.

8    In <u>Caliendo v. Warden</u>, 365 F.3d 691, 696 (9th Cir. 2004)
9    (citing <u>United States v. Armstrong</u>, 654 F.2d 1328, 1331-33 (9th
10   Cir. 1981), relied upon by Rucker, the Ninth Circuit applied the
11   "bright-line rule" of <u>Mattox</u>:  "Any unauthorized communication
12   between a juror and a witness or interested party is presumptively
13   prejudicial, but the government may overcome the presumption by
14   making a strong contrary showing."  <u>Id.</u>  In <u>Caliendo</u>, the state
15   court had applied an "incorrect standard when it placed the burden
16   of proof on the defendant instead of the government."  <u>Id.</u> at 698.

17   Unlike the jurors in the aforementioned cases, neither the
18   foreperson nor the two female jurors accused of misconduct are
19   alleged to have had an ex parte communication with third persons
20   during deliberations.  Instead, the incidents of alleged jury
21   misconduct concern the introduction of extraneous information into
22   the deliberations.  Therefore, <u>Mattox</u> and its successors are
23   distinguishable.

24   Here, the foreperson, with the advice of his counsel, elected
25   to assert the Fifth Amendment to any question regarding his
26   participation as a juror, and the trial court recognized the claim
27   of privilege.  (Lodgment No. 2, Rep.'s Tr. vol. 5, 1047.)
28   Petitioner had no additional evidence to introduce and submitted on

1  the record.   (Id.)   At this point, the court denied the motion.

2       In an analogous case, the defendant submitted his motion for a

3  new trial on the declarations filed in support of the motion.

4  United States v. Saya, 247 F.3d at 934.   Without deciding whether

5  there was a right to an evidentiary hearing with live witnesses to

6  resolve claims of juror misconduct, the court found that the

7  defendant waived any right to present witnesses.   Id.   The Ninth

8  Circuit concluded that the district court did not abuse its

9  discretion in not hearing live testimony.   Id. at 935.   "[T]he

10 [trial] court carefully considered the allegations of juror

11 misconduct [being exposed to extraneous information], read the

12 juror declarations, gave both parties an opportunity to present

13 live witnesses, conducted a hearing where both sides made legal

14 arguments, and issued a thorough, well-reasoned order denying

15 [defendant's] motion."   Id.   More was not required there.   More is

16 not required here.

17      The trial court's credibility determination was not

18 unreasonable in light of the evidence presented during the two

19 hearings on the motion for a new trial.   Allegations that the

20 foreperson consulted extraneous information were not credible;

21 therefore, there was no basis for the court to apply the

22 presumption of prejudice test and to conduct a further evidentiary

23 hearing.   When a post-trial hearing is held, "the state court's

24 findings are entitled to a presumption of correctness on federal

25 habeas corpus review."   Tinsley v. Borg, 895 F.2d 520, 524-25 (9th

26 Cir. 1990) (citing 28 U.S.C. § 2254(d)).

27      Rucker's trial judge found that the foreperson's allegations

28 were not credible, and the claim that he read the newspaper article

1  was not supported.   (Lodgment No. 2, Rep.'s Tr., vol. 5, 1035.)

2  The California Court of Appeal reviewed the newspaper article and

3  held that "[a]ny presumption of prejudice that arose [from the

4  foreperson reading the article] is clearly rebutted by the

5  newspaper article itself . . . .   The article merely reports the

6  testimony and argument that occurred during the trial in front of

7  the jurors."  (Lodgment No. 7, People v. Rucker, No. D043159, slip

8  op. at 22.)   Under these circumstances, the denial of this claim

9  was not contrary to, or an unreasonable application of, clearly

10  established federal law.

11                         **The Internet Search**

12       Rucker argues that the court of appeal unreasonably applied

13  the presumption of prejudice test by "ignoring" the foreperson's

14  claim that he looked up Petitioner's name on the internet.  (Mem.

15  P. & A. Supp. Pet. 12.)   In her appeal, Petitioner asserted that

16  the foreperson consulted the internet during the trial and searched

17  Rucker's name.  (Lodgment No. 4, Appellant's Opening Brief at 68-

18  69, People v. Rucker, No. D043159.)   She correctly states that the

19  California Court of Appeal did not discuss the juror's claimed

20  internet search; instead, it described the claim generally as

21  "juror misconduct."  (Lodgment No. 7, People v. Rucker, No.

22  D043159, slip op. at 19-23.)   The court only addressed the

23  assertion that the foreperson read a newspaper article about the

24  case during the trial.  (Id. at 19-23.)

25       Rucker presented the internet search claim to the California

26  Supreme Court in a petition for review which was summarily denied.

27  (Lodgment No. 10, Petition for Review at 21-24, People v. Rucker,

28  No. S132431.)   Because the dispositive state court order does not

1  address the internet search and furnish the basis for its denial,

2  this Court must "look through" to the last reasoned state court

3  opinion, which was the decision of the state trial court.  Ylst,

4  501 U.S. at 801-06; Lambright v. Stewart, 241 F.3d 1201, 1205 (9th

5  Cir. 2001) (analyzing state trial court's order); see Winfield v.

6  Roper, 460 F.3d 1026, 1038 (8th Cir. 2006) (discussing application

7  of Ylst).

8      At the continued hearing on August 27, 2003, the trial judge

9  denied the motion for a new trial.  The court twice discussed the

10 fact that the day before his declaration was submitted, the

11 foreperson was visiting Rucker in jail.  (Lodgment No. 2, Rep.'s

12 Tr., vol. 5, 1035-36, 1044.)  The foreperson's statement that he

13 did not know that when the jurors were polled he could say "no,

14 that is not my vote," was also not credible.  (Compare id. at 1036,

15 with Lodgment No. 1, Clerk's Tr. 191.)  The trial judge noted:  "We

16 polled him.  All the declarations indicate that they talked about

17 the polling in the room.  They knew they were going to be polled."

18 (Lodgment No. 2, Rep.'s Tr., vol. 5, 1036.)  The foreperson's claim

19 that he did not understand the polling process was "unbelievable."

20 (Id.)

21     Juror Robinson's credibility was also undermined by other

22 jurors.  The jurors stated that the foreperson initially indicated

23 that "he would not find [Rucker] guilty, was not going to listen to

24 any further evidence and was not going to participate in

25 deliberations . . . ."  (Id. at 1042-43.)

26     The record does not show what was on the internet when the

27 foreperson looked up Rucker on the Google website.  (Compare

28 Lodgment No. 1, Clerk's Tr. 191, with Lodgment No. 2, Rep.'s Tr.,

vol. 5, 1031-32.)  Juror Robinson does not describe what he claims to have seen on the internet website, and Rucker's counsel did not search the Google website and could not identify what may have appeared on that site.  (Id.)  At best, Rucker established that on June 25, 2003, eight days after the guilty verdict and two days after the foreperson signed his declaration, Rucker's attorney went to other websites and located some newspaper articles about the Petitioner.  (Lodgment No. 2, Rep.'s Tr., vol. 5, 1031-32.)

Furthermore, the declarations of four jurors all stated that the foreperson never mentioned doing internet research.  (Id. at 227, 230, 232, 234.)  Because the foreperson did not state that he introduced the material into the deliberations, there is no possibility that it adversely affected the verdict.  See Sea Hawk Seafoods, Inc., 206 F.3d at 906.  Moreover, Robinson gave no description of the internet content; there is no evidence it was prejudicial.  Even if the trial court's determination that the foreperson was not credible is ignored, there is no evidence that the internet content could have adversely affected the verdict. Id.  The presumption of prejudice which arises from the introduction of extraneous information is not conclusive where, as here, the extraneous information was not material to a finding of guilt.  See Bagnariol, 665 F.2d at 887; Remmer, 347 U.S. at 229; Mattox, 146 U.S. at 148-50.

For the foregoing reasons, the trial court's holding that the foreperson was not credible and its failure to presume that the foreperson's internet research was prejudicial were not contrary to, nor an unreasonable application of, clearly established federal law.  Furthermore, this Court cannot hold that the state-court

1  finding is unsupported by substantial evidence in the record.   To

2  do so, the Court "must be convinced that an appellate panel,

3  applying the normal standards of appellate review, could not

4  possibly conclude that the finding is supported by the record."

5  <u>Taylor v. Maddox</u>, 366 F.3d 992, 1000 (9th Cir. 2004).

6                   e.   <u>The Misconduct of Two Female Jurors</u>

7        Petitioner argues that the trial court violated her due

8  process rights when it failed to conduct an evidentiary hearing

9  into allegations that two female jurors injected extraneous

10  evidence into the deliberative process.  (Mem. P. & A. Supp. Pet.

11  12-13.)  According to Rucker, two female jurors referred to their

12  personal experiences "in not resorting to violence after having

13  been sexually attacked and/or physically abused[]" to convince

14  other jurors that Petitioner did not act as a reasonable person

15  would have under the circumstances and was guilty.  (<u>Id.</u> at 12.)

16        Respondent counters that the trial court did not err in

17  denying Petitioner's motion for a new trial based on allegations of

18  jury misconduct by the two female jurors.  (Mem. P. & A. Supp.

19  Answer 14.)  The warden further argues the state court decision

20  rejecting Petitioner's claim was neither contrary to, nor an

21  unreasonable application of, clearly established federal law.

22  (<u>Id.</u>)

23        Rucker presented this claim to the California Supreme Court in

24  a petition for writ of habeas corpus which was silently denied.

25  (Lodgment No. 12, Petition for Writ of Habeas Corpus at 10, <u>In re</u>

26  <u>Rucker</u>, No. S145400; Lodgment No. 13, <u>In re Rucker</u>, No. S145400,

27  order.)  Petitioner did not present this claim to the California

28  Court of Appeal.  Because the dispositive state-court order does

1  not "furnish a basis for its reasoning," this Court must conduct an

2  independent review of the record to determine whether the state

3  court's decision is contrary to, or an unreasonable application of,

4  clearly established Supreme Court law.  See Delgado, 223 F.3d at

5  982.

6      "Federal habeas review is not de novo when the court does not

7  supply reasoning for its decision, but an independent review of the

8  record is required to determine whether the state court clearly

9  erred in its application of controlling federal law."  Id.  An

10  independent review of the record is the only method available to

11  determine whether a silent state court denial was objectively

12  unreasonable.  Himes v. Thompson, 336 F.3d at 853.  Even with an

13  independent review, the federal court "still defer[s] to the state

14  court's ultimate decision."  Pirtle v. Morgan, 313 F.3d 1160, 1167

15  (9th Cir. 2002).

16      In extraneous information cases, "the burden is generally on

17  the party opposing a new trial to demonstrate the absence of

18  prejudice, and a new trial is ordinarily granted if there is a

19  reasonable possibility that the material could have affected the

20  verdict."  Sea Hawk Seafoods, Inc., 206 F.3d at 906.  Although

21  holding an evidentiary hearing is preferred, it is not necessary

22  where "the court [knows] the exact scope and nature of the . . .

23  extraneous information."  United States v. Saya, 247 F.3d at 935

24  (quoting United States v. Halbert, 712 F.2d 388, 389 (9th Cir.

25  1983)).

26      In his declaration, the foreperson claimed that female juror

27  number nine was "antagonistic and self-righteous" toward Rucker

28  because the juror had been the victim of rape and had not resorted

1  to shooting her attacker.  (Lodgment No. 1, Clerk's Tr., vol. 1,

2  190.)  Robinson concluded that the jury "seemed to rely on these

3  statements as being relevant facts."  (Id.)  This subjective

4  statement is inadmissible and cannot be considered as support for

5  Rucker's claim.  Estrada, 512 F.3d at 1237; Fed. R. Evid. 606(b);

6  accord Cal. Evid. Code § 1150(a) (West 2008).

7      The foreperson also alleged that juror number two stated she

8  had been "physically attacked by a male" and "used these

9  events . . . to try and persuade the jurors that the defendant must

10 be guilty of attempted murder" because Rucker did not react as this

11 juror did when she was attacked.  (Lodgment No. 1, Clerk's Tr.,

12 vol. 1, 190.)  The statement that juror two referred to her

13 experiences "to try and persuade" other jurors is likewise

14 inadmissible.  See Estrada, 512 F.3d at 1237; Fed. R. Evid. 606(b).

15 Additionally, Robinson alleges that juror number two was

16 inattentive during deliberations and went into the restroom a

17 number of times during the final day of deliberations, while the

18 jury continued to deliberate.  (Lodgment No. 1, Clerk's Tr., vol.

19 1, 190.)

20      The record does not support all of Petitioner's contentions.

21 This Court has reviewed the declarations of the four jurors

22 submitted by the prosecution in response to Petitioner's new trial

23 motion; each stated that juror nine was not antagonistic or self-

24 righteous toward Rucker.  (Id. at 227, 230, 232, 234.)  The four

25 jurors denied that juror two was inattentive, (id.), and one juror

26 stated that deliberations did not continue while juror two was sick

27 and in the restroom (id. at 234).

28 //

1    The juror declarations submitted by the prosecution do not
2    dispute that jurors two and nine discussed extraneous personal
3    experiences during deliberations.   Juror Reynolds stated that juror
4    two "described her personal experience in comparing what a
5    reasonably average person would do in the same situation . . . ."
6    (Id. at 230.)   The disclosures that jurors two and nine had been
7    abused or raped and their responses are admissible as extrinsic
8    evidence impermissibly brought to the jury's attention.   (See id.
9    at 227, 230, 234.)   But any statement suggesting how this
10   information was used by the jury, not used by the jury, or affected
11   the declarant's opinion of Rucker is not admissible.   Estrada, 512
12   F.3d at 1237; Fed. R. Evid. 606(b).

13   Rucker argues that the four juror declarations corroborate,
14   rather than contradict, the foreperson's declaration because they
15   do not dispute that jurors two and nine discussed their personal
16   experiences in an attempt to influence others.   (Traverse 4-6.)
17   But evidence about the subjective effect of statements by jurors
18   two and nine is inadmissible.   Estrada, 512 F.3d 1237-38; Fed. R.
19   Evid. 606(b).   Similar declarations by the foreperson or other
20   jurors are precluded.   Id.   One juror stated that when juror nine
21   disclosed that she had been "raped or abused," the other jurors
22   commented "that it was interesting but this is not the evidence and
23   we need to look at the evidence and we kind of re-directed it in
24   that way."   (Lodgment No. 1, Clerk's Tr., vol. 1, 227.)   This
25   statement, likewise, is inadmissible.   Still, in Estrada, the Ninth
26   Circuit implied that analogous declarations by jurors that the
27   discussion of extraneous items "was improper and [some jurors]
28   objected" was admissible.   Estrada, 512 F.3d at 1239 n.12.

07cv0364

1     The admissible evidence about the extraneous disclosures by

2  jurors two and nine is limited.  The foreperson's admissible

3  statements are that juror two "stated she had been physically

4  attacked by a male in the past[,]" and juror nine "commented a

5  number of times regarding the fact that she had previously been

6  raped and physically abused[]" but "had never resorted to using a

7  gun when she had been attacked . . . ."  (Lodgment No. 1, Clerk's

8  Tr., vol. 1, 190.)  In his declaration, juror Carrick stated that

9  juror nine "did refer to the fact that she had been raped or abused

10 or what have you . . . ."  (Id. at 227.)  Juror Reynolds recalled

11 "juror nine speaking of her own experience as to being raped[,]"

12 and "[j]ust as juror number nine did, this juror [number two]

13 described her personal experience in comparing what a reasonably

14 average person would do in the same situation that concerned this

15 case."  (Id. at 230.)  Juror Kerns stated that "[d]uring

16 deliberations, juror number nine did mention that she had been

17 abused[,]" and she commented "one time about being attacked on the

18 street, and using a stun gun and running away."  (Id. at 234.)

19     In Sassounian, 230 F.3d at 1109, the Ninth Circuit stated that

20 the court "may consider testimony concerning whether the improper

21 evidence was considered, [but] we may not consider the jurors'

22 testimony about the subjective impact of the improperly admitted

23 evidence."  In Rucker's case, the foreperson, and to varying

24 degrees, jurors Reynolds and Kerns, acknowledge that the

25 experiences of jurors two and nine were described and discussed

26 during the deliberations.  (Lodgment No. 1, Clerk's Tr., vol. 1,

27 190, 230, 234.)  The jury's consideration of this extraneous

28 information was trial error subject to a "harmless error" analysis.

1  See Estrada, 512 F.3d at 1235; Sassounian, 230 F.3d at 1108.  The
2  Court must determine the effect of the error.
3      Petitioner argues that the state court was required to apply a
4  presumption of prejudice, which was not done.  (Mem. P. & A. Supp.
5  Pet. 12-13.)  The trial judge acknowledged that statements by two
6  jurors that they had been raped and would not act as Rucker did
7  were "problematic."  (Lodgment No. 2, Rep.'s Tr., vol. 5, 1037.)
8  Yet, no state court applied a presumption of prejudice to the claim
9  of misconduct by these jurors.
10      Even if the foreperson is not credible, statements by jurors
11  Carrick, Reynolds, and Kerns that jurors two and nine disclosed
12  they were victims of abuse or rape, coupled with statements by
13  jurors Reynolds and Kerns that the disclosures entered into the
14  deliberations, were sufficient to give rise to a presumption of
15  prejudice.  Furthermore, neither the trial nor appellate courts
16  required the prosecution to rebut the presumption arising from the
17  introduction of this extraneous evidence.  (Id.)  This was error.
18      The effect of this juror misconduct differs on direct review
19  and collateral review.  "On direct review of federal criminal
20  cases, after a defendant has demonstrated that the jury considered
21  extrinsic evidence, [courts] readily find prejudice absent specific
22  evidence that there was no prejudice."  Fields v. Brown, 503 F.3d
23  755, 802 (9th Cir. 2007) (Berzon, J. dissenting).  On habeas
24  review, however, the issue is "whether the error was harmless; that
25  is, whether the extrinsic information had a 'substantial and
26  injurious effect or influence in determining the jury's verdict.'"
27  Sassounian, 230 F.3d at 1108 (citing Brecht v. Abrahamson, 507 U.S.
28  619, 623 (1993)); accord Estrada, 512 F.3d at 1235.

-32-

1      The state courts did not consider, and made no findings about,

2  whether Rucker suffered prejudice from the misconduct of jurors two

3  and nine.  The trial court simply determined that the premise

4  underlying the jury misconduct claim had not been established.

5  (Lodgment No. 1, Clerk's Tr., vol. 1, 1044.)

6      "'There is no bright line test for determining whether a

7  defendant has suffered prejudice from an instance of juror

8  misconduct.'"  Sassounian, 230 F.3d at 1109 (quoting Rodriguez v.

9  Marshall, 125 F.3d 739, 744 (9th Cir. 1997)).  When determining the

10  prejudicial effect of extraneous information, the nature of the

11  information is an important consideration.  Id.  In particular, the

12  statements attributed to juror nine are significant -- that she had

13  been raped and her response.  (Lodgment No. 1, Clerk's Tr., vol. 1,

14  230.)  The nature of juror nine's statement indicates that it

15  prejudiced Rucker.  Statements by juror two, that she had been

16  physically attacked, are equally prejudicial.

17      The court also considers other factors:

18      (1) whether the material was actually received, and if
so, how; (2) the length of time it was available to the
19  jury; (3) the extent to which the juror discussed and
considered it; (4) whether the material was introduced
20  before a verdict was reached, and if so at what point in
the deliberations; and (5) any other matters which may
21  bear on the issue of the reasonable possibility of
whether the extrinsic material affected the verdict.

22

23  Sassounian, 230 F.3d at 1109 (citing Dickson v. Sullivan, 849 F.2d

24  at 406).

25      The jury was instructed to consider whether Rucker's actions

26  were the result of legally adequate provocation.  They were told:

27  //

28  //

The question to be answered is whether or not at the time obscured or disturbed by passion to such an extent as would cause the <u>ordinarily</u> <u>reasonable</u> <u>person</u> of average disposition to act rashly and without deliberation and reflection, and from passion rather than from judgment.

(Lodgment No. 2, Rep.'s Tr., vol. 4, 903, June 12, 2003) (emphasis added). In his closing argument, defense counsel argued that Rucker's actions might rise to the level of attempted manslaughter, not attempted murder. (<u>Id.</u> at 979-80, June 12, 2003 (defense closing).) "Someone is asking you to consider whether or not it's reasonable and legitimate that these emotions arose under this kind of circumstance, under this kind of condition." (<u>Id.</u> at 980.) The prosecutor responded:

> This whole thing about whether or not there was a clouding of her judgment, whether or not she was laboring under a heat of passion to give rise to a potential voluntary attempted manslaughter hinges on whether or not there was sufficient provocation, the law requires there be provocation of the individual such that an ordinarily reasonable individual would so be aroused and suffer under that passion.

(<u>Id.</u> at 991, June 12, 2003 (prosecution closing).)

Here, the jury received the extraneous evidence during their deliberations, although the length of time it was available to them is uncertain. It is clear, however, that the information was discussed, even if only in the context of CALJIC 8.42, which concerns how an "ordinarily reasonable person" might respond. (<u>Id.</u> at 902-03 (jury instructions).) The material was discussed before a verdict was reached. These factors weigh in favor of a finding of prejudice.

//

//

-34-

1    There are factors that may reduce the potential for prejudice:

2    [1] whether the prejudicial statement was ambiguously
     phrased; [2] whether the extraneous information was
3    otherwise admissible or merely cumulative of other
     evidence adduced at trial; [3] whether a curative
4    instruction was given or some other step taken to
     ameliorate the prejudice; [4] the trial context; and [5]
5    whether the statement was insufficiently prejudicial
     given the issues and evidence in the case.
6

7    Sassounian, 230 F.3d at 1109 (citing Jeffries v. Wood, 114 F.3d

8    1484, 1491-92 (9th Cir. 1997)).

9         The statements by jurors two and nine were not equivocal.

10   Their personal experiences were not otherwise admissible or

11   cumulative of other evidence.  Their comments are troubling for

12   another reason.  The Ninth Circuit has recognized that juror bias

13   might be "presumed or implied" "'where a juror or his close

14   relatives have been personally involved in a situation involving a

15   similar fact pattern,' . . . . "  Coughlin v. Tailhook Ass'n, 112

16   F.3d 1052, 1062 (9th Cir. 1997) (quoting Tinsley, 895 F.2d at 528;

17   accord Estrada v. Scribner, 512 F.3d at 1240.)  This matter was not

18   brought to the attention of the trial judge before the verdict, so

19   a curative instruction was not a possibility.

20        The jury was asked to determine what an "ordinarily reasonable

21   person" would do in Petitioner's situation.  This Court cannot

22   conclude that the personal experiences introduced by jurors two and

23   nine, and discussed in the context of what an "ordinarily

24   reasonable person" would do, was not prejudicial.  An independent

25   review of the record establishes that the misconduct of jurors two

26   and nine had a substantial and injurious effect on the verdict that

27   Rucker was guilty of attempted murder.  See Brecht, 507 U.S. at

28   623.  Thus, Petitioner is entitled to habeas relief on this

-35-

1  subclaim.

2          **f.**   **Judicial Misconduct**

3      Rucker argues that the trial judge committed judicial

4  misconduct when he effectively silenced Petitioner's main witness

5  in support of her new trial motion, the jury foreperson, by

6  threatening him with prosecution if he took the stand to testify at

7  the hearing.  (Mem. P. & A. Supp. Pet. 13.)

8      Rucker's Petition implies that at the August 5, 2003, hearing

9  on her motion for a new trial, the trial judge threatened the

10  foreperson with prosecution and coerced him into asserting his

11  Fifth Amendment privilege not to testify.  (Pet. 7-8.)  The record,

12  however, suggests that Robinson was not present.  (Lodgment No. 5,

13  Rep.'s Tr., vol. 5, 1018.)  At the hearing, Rucker's attorney

14  stated that he contacted the foreperson "yesterday," and there is

15  no indication that the foreperson attended the proceeding.[4]  (Id.)

16  Consequently, no threats were personally made to Robinson on August

17  5, 2003.

18      Petitioner raised this claim in her petition for writ of

19  habeas corpus to the California Supreme Court, which issued a

20  summary denial.  (Lodgment No. 12, Petition for Writ of Habeas

21  Corpus at 11, 13, In re Rucker, No. S145400; Lodgment No. 13, In re

22  Rucker, No. S145400, order.)  The state court of appeal did not

23  address this issue.  (See Lodgment No. 7, People v. Rucker, No.

24  D043159, slip op.)  The trial judge was not confronted with a claim

25  that he intimidated the foreperson into not taking the stand.

26  Consequently, because the dispositive state court order did not

27

28      [4]  By way of contrast, in her Petition, Rucker alleges that the
foreperson "appeared with his own counsel" at the hearing on August
27, 2003.  (Pet. at 8.)

07cv0364

"furnish a basis for its reasoning," this Court conducts an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law.  See Delgado v. Lewis, 223 F.3d at 982.

The Sixth Amendment right to compulsory process for obtaining the testimony of witnesses in the defense's favor is "incorporated in the Due Process Clause of the Fourteenth Amendment."  Washington v. Texas, 388 U.S. 14, 17-18 (1967).  It is a deprivation of due process under the Fourteenth Amendment for a judge to make threatening remarks to a witness for the defense, effectively driving that witness off the stand.  Webb v: Texas, 409 U.S. 95, 98 (1972).

In Webb, the trial judge singled out the sole defense witness, who was serving a prison sentence, for a lengthy admonition regarding the consequences of lying on the stand and assured the witness that if he lied, he would be prosecuted and likely convicted of perjury, which would be added to his current sentence and reduce his chances for parole.  Id. at 97-98.  Rucker contends that the trial judge 'silenced' the jury foreperson during the hearing on August 5, 2003, when the judge made numerous remarks concerning the potential criminal liability the foreperson faced if he testified.  (Mem. P. & A. Supp. Pet. 13-14; see also Lodgment No. 2, Rep.'s Tr., vol. 5, 1018-21.)

To establish a due process violation, Petitioner must do more than show that she was prevented from presenting the testimony of a witness, she must show that she was arbitrarily deprived of testimony that would have been relevant and material to her

07cv0364

1  defense.  <u>Washington</u>, 388 U.S. at 23.

2      At the August 5, 2003, hearing, the trial judge stated:  "Mr.

3  Robinson needs to be counseled.  He should have his own attorney

4  from this point forward, because of [sic] his assertions in his

5  affidavit are true, he's obstructing justice, should be prosecuted.

6  I would suggest you [Rucker's counsel] talk to him no further."

7  (Lodgment No. 2, Rep.'s Tr., vol. 5, 1019.)  The court continued:

8        Mr. Robinson's statements, although I'm somewhat
      skeptical as to their veracity, this particular gentleman

9        during the trial made every effort at every opportunity
      to make sure that we all knew he was there or not there,

10        to now inject himself and be the genesis of yet another
      controversy surrounding this case is not surprising.

11        Although troubling and likely criminal, it is not
      surprising.

12

13  (<u>Id.</u> at 1019-20.)

14      On several occasions, the members of the jury had been advised

15  not to read any newspaper accounts of the case.  <u>Id.</u> at 1021.  Yet,

16  it appeared that the foreperson ignored those instructions.  The

17  trial judge was ready to hear Robinson's testimony and even stated,

18  "I will require that he testify in this case.  That will be an

19  affair to remember."  (<u>Id.</u>)  The judge described the foreperson's

20  declaration as a "confession" (<u>id.</u> at 1019) and admission that

21  Robinson was in contempt because he ignored numerous admonitions to

22  refrain from reading anything regarding the case (<u>id.</u> at 1021).

23      The hearing was continued to August 27, 2003, and on that

24  date, the foreperson's attorney told the court, "I have advised

25  both counsel [for the prosecution and defense] that he [Robinson]

26  would be asserting his Fifth Amendment privilege to any questions

27  regarding his participation as a juror in this trial."  (<u>Id.</u> at

28  1027.)  Counsel for Rucker attempted to require Robinson to

1  testify about what jurors were discussing, including the two jurors

2  who injected their personal abuse and rape experiences into the

3  deliberations.   (See id. at 1027-29.)   The court declined, and

4  Rucker argued for a new trial on the basis of the declarations of

5  Robinson and the other jurors, four of which had been submitted by

6  the prosecution.   (Id. at 1026-47.)

7    Petitioner contends that her due process rights were violated

8  because she was not allowed to put the foreperson on the stand to

9  further determine the extent of the misconduct of the two female

10  jurors.   (Pet. 6, 8.)   Rucker complains that her witness was

11  "silenced," citing Webb, 409 U.S. 95.   (Mem. P. & A. Supp. Pet.

12  14.)   In Webb, after the prosecution rested its case, the defendant

13  called his only witness, an individual who was serving a prison

14  sentence.   Webb, 409 U.S. at 95.   The trial judge admonished the

15  witness:

16    "It is the court's duty to admonish you that you
     don't have to testify, that anything you say can and will
17    be used against you.  If you take the witness stand and
     lie under oath, the court will personally see that your
18    case goes to the grand jury and you will be indicted for
     perjury and the liklihood [sic] is that you would get
19    convicted of perjury and that it would be stacked onto
     what you already got, so that is the matter you have got
20    to make up your mind on.  If you get on the witness stand
     and lie, it is probably going to mean several years and
21    at least more time that you are going to have to serve.
     It will also be held against you in the penitentiary when
22    you're up for parole and the court wants you to
     thoroughly understand the chances you're taking by
23    getting on that witness stand under oath.  You may tell
     the truth and if you do, that is all right, but if you
24    lie you can get into real trouble.  The court wants you
     to know that.  You don't owe anybody anything to testify
25    and it must be done freely and voluntarily and with the
     thorough understanding that you know the hazard you are
26    taking."

27  Id. at 95-96.

28    The Supreme Court found that because of the disparity

-39-

1  between the position of the presiding judge and the inmate witness,

2  "the unnecessarily strong terms used by the judge could well have

3  exerted such duress on the witness' mind as to preclude him from

4  making a free and voluntary choice whether or not to testify."

5  Webb, id. at 98.  In Rucker's case, arguably, the trial judge's

6  comments about being "prosecuted" intimidated the foreperson, which

7  precluded him from making a voluntary choice about whether to

8  testify.

9       The similarity between the cases ends there.  Unlike the

10  inmate witness in Webb, Robinson was not in the courtroom when the

11  trial judge made his strong statements.  Also, the defendant in

12  Webb was unable to present any testimony from his only witness due

13  to the trial judge's remarks.  Here, Rucker's witness was not

14  completely "silenced," because she introduced the foreperson's

15  declaration in support of her new trial motion. (Lodgment No. 1,

16  Clerk's Tr., vol. 1, 190-92.)  Furthermore, there was ample

17  opportunity from the date of the foreperson's declaration, June 23,

18  2003, to the date of the continued hearing, August 27, 2003, for

19  Petitioner to further develop the record by issuing subpoenas for

20  jurors.

21       The trial judge was not adverse to hearing from jurors.  At

22  the August 5, 2003, hearing, he discussed the two female jurors

23  alleged to have introduced their personal experiences into the

24  deliberations and stated that it was up to the parties whether they

25  wanted to "talk" to these jurors. (Id. at 1021.)  The court

26  continued:

27          Whether or not the information that they had those
            personal experiences and the expressions they made during
28          deliberations are cause for concern or serve as a basis
            to set aside the jury verdict, we certainly have to

1      address that.  But I don't think we need them here unless
2      one of you [attorneys] determines that Mr. Robinson's
      statements are inaccurate, that they never made these
3      statements during deliberations.

4 (Id. at 1022.)

5     Another difference between Rucker's case and Webb is that

6 Robinson was represented by counsel.  At the August 5,2003,

7 hearing, the court stated that "[h]e [the foreperson] should have

8 his own attorney from this point forward . . . ."  (Id. at

9 1019.)  On August 27, 2003, Robinson attended the hearing with his

10 attorney.  This difference is significant.

11     In United States v. Santiago-Becerril, 130 F.3d 11, 23 (1st

12 Cir. 1997), the defendant complained that the trial judge's warning

13 influenced a defense witness not to testify.  The First Circuit

14 observed that "the court ultimately provided the witness with

15 counsel with whom she conferred privately before making her

16 decision whether to testify.  The provision of counsel helped

17 assure that [the witness's] decision was made voluntarily, in her

18 own interest, rather than being the product of judicial coercion."

19 Id. at 25 (footnote omitted).

20     The Ninth Circuit reached a similar conclusion in an analogous

21 setting.  In United States v. Vavages, 151 F.3d 1185, 1188 (9th

22 Cir. 1998), the defendant complained that the prosecutor coerced

23 his common-law wife into refusing to testify in his defense by

24 contacting her attorney and informing her counsel of the

25 consequences of perjury.  The court noted that the prosecutor did

26 not directly admonish the witness:  "[A]dmonishments that are

27 threatening or intimidating to a lay witness might not be

28 threatening or intimidating to the witness' counsel.  [Citation

1   omitted.]   In other words, a defendant may not be prejudiced by a
2   prosecutor's improper warnings where counsel for a witness strips
3   the warnings of their coercive force."   <u>Id.</u> at 1191; <u>see</u> <u>United</u>
4   <u>States v. Jackson</u>, 453 F.3d 302, 306 n.6 (5th Cir. 2006) (citing
5   <u>United States v. Smith</u>, 997 F.2d 674, 680 (10th Cir. 1993) (finding
6   no abuse of discretion where court's admonitions were not directed
7   to the witness and counsel explained the risk of perjury)).

8        In other cases, jurors have invoked the Fifth Amendment and
9   refused to testify regarding the introduction of extraneous
10  information to the jury.   <u>See</u> <u>United States v. Rosenthal</u>, 454 F.3d
11  943, 950 n.6 (9th Cir. 2006).   In <u>Rosenthal</u>, two jurors invoked the
12  Fifth Amendment, refused to testify and, with the government's
13  consent, submitted declarations instead.   With this evidence,
14  the Ninth Circuit found a "reasonable possibility" of prejudice
15  from extraneous information, which the government had not succeeded
16  in rebutting.   <u>Id.</u> at 950.

17       Rucker's claim of judicial misconduct does not rise to the
18  level of a due process violation.   In affirming her conviction, the
19  California Court of Appeal observed that the foreperson exercised
20  his Fifth Amendment right not to testify.   (Lodgment No. 7, <u>People</u>
21  <u>v. Rucker</u>, No. D043159, slip op. at 22.)   It did not address
22  whether Robinson was threatened or intimidated into invoking the
23  Fifth Amendment.   (<u>Id.</u>)   The state court implicitly held that the
24  witness's decision to assert his Fifth Amendment privilege was not
25  the product of judicial coercion.   As a result, this Court may
26  assume the "implicit finding is correct unless clear and convincing
27  evidence proves otherwise."   <u>Goldyn v. Hayes</u>, 444 F.3d 1062, 1065
28  n.5 (9th Cir. 2006) (presuming that in certain circumstances

1  federal courts may be required to give deference to state court
2  factual findings implicit in the state court judgment).

3       Regardless of whether the state court implicitly found that
4  the foreperson's assertion of his Fifth Amendment privilege was not
5  the product of judicial coercion, this Court's independent review
6  of the record shows that the statements of the trial judge on
7  August 5, 2003, which were not directed at the foreperson, did not
8  coerce either the witness or his counsel to invoke the Fifth
9  Amendment at the continued hearing on August 27, 2003.

10      Notwithstanding the trial judge's conduct, Rucker presented
11 the declaration of the foreperson and was not denied her compulsory
12 right to present this witness in support of her motion for a new
13 trial.  See Washington, 388 U.S. at 16.  The California Supreme
14 Court's silent denial of this claim was not contrary to, or an
15 unreasonable application of, clearly established federal law.

16              g.    **The Blanket Assertion of the Fifth Amendment**
17                    **Privilege**

18      Rucker argues that the trial judge permitted the foreperson to
19 "improperly assert a blanket privilege without an individual
20 determination as to whether the privilege applied to every area of
21 inquiry."  (Mem. P. & A. Supp. Pet. 14.)  She alleged that the
22 trial court improperly recognized the foreperson's blanket
23 assertion of the Fifth Amendment in her petition for writ of habeas
24 corpus to the California Supreme Court, which denied the petition
25 without explanation.  (Lodgment No. 12, Petition for Writ of Habeas
26 Corpus at 13, In Re Rucker, No. S145400; Lodgment No. 13, In Re
27 Rucker, No. S145400, order.)  Because the dispositive state court
28 order did not give a basis for its decision, this Court will

1    conduct an independent review of the record to resolve this claim.

2    Himes v. Thompson, 336 F.3d at 853.

3        Petitioner relies on Vavages, 151 F.3d at 1191-92, as support

4    for her claim.  (Id.)  The Ninth Circuit, in Vavages, set out the

5    guidelines for evaluating a witness's Fifth Amendment claim.

6            In order to assert the privilege, witnesses "must
         show that their testimony would 'support a conviction
7        under a . . . criminal statute' or 'furnish a link in the
         chain of evidence needed to prosecute the claimant for a
8        . . . crime.'"  United States v. Rendahl, 746 F.2d 553,
         555 (9th Cir. 1984) (quoting Hoffman v. United States,
9        341 U.S. 479, 486, (1951)).  "The standard for
         determining whether a claim of privilege is justified is
10       'whether the claimant is confronted by substantial and
         real, and not merely trifling or imaginary, hazards of
11       incrimination.'"  United States v. Rubio-Topete, 999 F.2d
         1334, 1338 (9th Cir. 1993) (quoting United States v.
12       Apfelbaum, 445 U.S. 115, 128 (1980)) (internal quotation
         marks omitted); see also United States v. Troescher, 99
13       F.3d 933, 934-35 (9th Cir. 1996).

14   Id.

15       The Court recognized the tension between the defendant's and

16   witness's respective constitutional rights.

17           "[W]hen balancing the [S]ixth [A]mendment right of
         the accused and the [F]ifth [A]mendment right of the
18       witness, 'the trial judge must make an appropriate
         inquiry into the basis of the privilege claimed by the
19       witness, and may not permit the witness to refuse to
         testify'" where the witness has no good-faith basis for
20       invoking the privilege or a narrower privilege would
         adequately protect the witness.

21

22   United States v. Vavages, id. (quoting United States v. Thornton,

23   733 F.2d 121, 125 (D.C. Cir. 1984) (citation omitted)).

24   Nevertheless, a defendant may be denied the right to compulsory

25   process because of the witness's countervailing privilege against

26   self-incrimination.  United States v. Moore, 682 F.2d 853, 854 (9th

27   Cir. 1982).  "The court's duty to scrutinize a witness' invocation

28   of the Fifth Amendment is particularly weighty where, as here, the

1   witness makes a blanket assertion of the privilege." United States

2   v. Vavages, 151 F.3d at 1192 (citing United States v. Goodwin, 625

3   F.2d 693, 701 (5th Cir. 1980)).

4        The Ninth Circuit has previously stated that "[a] proper

5   application of [Hoffman v. United States, 341 U.S. 479 (1951)]

6   requires that the Fifth Amendment claim be raised in response to

7   specific questions . . . .  Thus a blanket refusal to answer any

8   question is unacceptable." United States v. Pierce, 561 F.2d 735,

9   741 (9th Cir. 1982).  But there is at least one exception.  "In

10  United States v. Tsui, 646 F.2d 365, 367-68 (9th Cir. 1981), we

11  found 'an exception to . . . Pierce . . .[where,] based on its

12  knowledge of the case and of the testimony expected from the

13  witness, [the trial court] can conclude that the witness could

14  'legitimately refuse to answer essentially all relevant

15  questions.'" Moore, 682 F.2d at 856.  This narrow exception is

16  applicable "where the trial judge has some special or extensive

17  knowledge of the case that allows evaluation of the claimed [F]ifth

18  [A]mendment privilege even in the absence of specific questions of

19  the witness." Id.

20       Similarly, the District of Columbia Court of Appeals, in

21  United States v. Thornton, 733 F.2d at 125-26, acknowledged that

22  "normally" the Fifth Amendment is "asserted in response to specific

23  questions.  In unusual cases, however, a district judge may sustain

24  a blanket assertion of privilege after determining that there is a

25  reasonable basis for believing a danger to the witness might exist

26  in answering any relevant question." Rucker's case falls within

27  these exceptions.

28       Contrary to Petitioner's argument, the trial court did not err

1   in allowing the foreperson to make a blanket assertion of a Fifth
2   Amendment privilege.  The trial judge made it clear that if the
3   foreperson testified as to anything in his declaration, he would
4   risk criminal prosecution; therefore, there was a legitimate basis
5   to allow a blanket privilege as to all testimony concerning the
6   alleged juror misconduct.  (See Lodgment No. 2, Rep.'s Tr., vol. 5,
7   1019-21); see generally Rubio-Topete, 999 F.2d at 1338.

8        Finally, this Court and the Sixth Circuit have found no
9   Supreme Court case holding that a defense witness invoking the
10  Fifth Amendment must "take the stand and invoke the right on a
11  question-by-question basis."  Davis v. Straub, 430 F.3d 281, 288
12  (6th Cir. 2005).  "Hoffman [v. United States, 341 U.S. 479],
13  moreover, announced no rule proscribing the blanket assertion of
14  the privilege against self-incrimination."  Id.  "[I]t cannot be
15  said that the Court [in Washington v. Texas, 388 U.S. 14] created
16  clearly established law against a blanket assertion of the
17  privilege or resolved how courts should treat the tension between
18  the witness's and the defendant's interests."  Id. at 290.  Because
19  there is no controlling Supreme Court authority, the California
20  Supreme Court's silent denial of this claim was not contrary to, or
21  an unreasonable application of, clearly established federal law.

22       The Court RECOMMENDS that the subclaims in claim one be DENIED
23  with the exception of the subclaim that jurors two and nine
24  introduced prejudicial extraneous evidence, their personal
25  experiences of physical abuse and rape, into the jury deliberations
26  which gave rise to a presumption of prejudice which was not
27  rebutted.  As to this argument, habeas relief should be GRANTED.
28  //

-46-

1
## 2.   The Jury Instruction

2   In claim two, Petitioner argues that her due process rights

3 under the Fifth and Fourteenth Amendments were violated by the

4 trial court's use of CALJIC No. 2.50.02.   (Pet. 9; Mem. P. & A.

5 Supp. Pet. 15-16.)   She contends the instruction allowed the jury

6 to draw an unreasonable permissive inference, specifically that

7 Rucker attempted to murder Bert Watson because she previously

8 pointed a gun at David Yu or previously harassed him in separate

9 incidents.   (Id.)

10   The trial court instructed the jury with CALJIC No. 2.50.02 as

11 follows:

12      If you find by a preponderance of the evidence that
       the defendant has committed a prior offense involving
13     domestic violence, you may, but are not required to,
       infer that the defendant had a disposition to commit
14     another offense involving domestic violence.

15           .   .   .   .

16      If you find that the defendant had this
       disposition, you may, but are not required to, infer that
17     she was likely to commit and did commit the crime for
       which she's accused in count 1 [attempted murder].   Now,
18     the weight and significance of any of this evidence is
       for you to decide.
19
       However, evidence that the defendant committed a
20     prior offense or offenses involving domestic violence can
       never be sufficient, by itself, to prove beyond a
21     reasonable doubt that she committed the offenses charged
       in this case.   The weight and significance, if any, of
22     that prior offense involving domestic violence is simply
       one factor that you may consider, along with all the
23     other evidence in the case, in reaching your ultimate
       decision as to whether the defendant is guilty or not
24     guilty of the crime charged in count 1.

25 (Lodgment No. 2, Rep.'s Tr., vol. 4, 893-94.)

26   Petitioner claims that this instruction allowed the jury to

27 conclude that she attempted to murder Watson if it found by a

28 preponderance of the evidence that she had displayed a gun to David

-47-

07cv0364

1  Yu and had harassed Yu upon the breakup of their relationship.
2  (Mem. P. & A.'s Supp. Pet. 15-16.)   Rucker argues that this
3  conclusion is not justified by reason and common sense, citing
4  Francis v. Franklin, 471 U.S. 307, 314-15 (1985).   (Id. at 15.)

5       Respondent counters that the claim must fail because there is
6  no reasonable likelihood that the instruction misled the jury into
7  finding Petitioner guilty of attempted murder based solely on the
8  prior uncharged acts of domestic violence.   (Mem. P. & A. Supp.
9  Answer 16.)

10       Rucker raised this claim in her petition for review to the
11 California Supreme Court, which was summarily denied.   (See
12 Lodgment No. 10, Petition for Review at 40, People v. Rucker, No.
13 S132431; Lodgment No. 11, People v. Rucker, No. S132431, order.)
14 She raised a similar challenge to CALJIC No. 2.05.02 in her appeal
15 to the California Court of Appeal.   (Lodgment No. 4, Appellant's
16 Opening Brief at 63, People v. Rucker, No. D043159.)   On appeal,
17 Rucker argued that CALJIC No. 2.50.02 created an illogical
18 permissive inference in her case because the crime charged and the
19 prior acts were greatly disparate.   (Id. at 65-66.)

20       Petitioner asserts that "the uncharged acts of alleged
21 domestic violence did not support the inference created by the
22 instruction, creating error of constitutional magnitude . . . ."
23 (Mem. of P. & A. Supp. Pet. 16.)   The California Court of Appeal's
24 analysis of Rucker's claim focused on the dissimilarity of the
25 incidents, rather than the constitutionality of the jury
26 instruction.   (Lodgment No. 7, People v. Rucker, No. D043159, slip
27 op. at 19.)   The court concluded that the prior incident of
28 domestic violence was not dissimilar from the offense charged.

1  (Id.)  It did not, however, address whether the jury instruction

2  violated the Constitution.  Consequently, this Court must conduct

3  an independent review of the record to determine whether the state

4  court's decision was contrary to, or an unreasonable application

5  of, clearly established Supreme Court law.  See Himes, 336 F.3d at

6  853; Delgado, 223 F.3d at 982.

7      Federal habeas relief is warranted where a petitioner

8  establishes that the ailing instruction "so infected the entire

9  trial that the resulting conviction violates due process."  Estelle

10  v. McGuire, 502 U.S. 62, 71-72 (1991); see also Donnelly v.

11  DeChristoforo, 416 U.S. 637, 643 (1974) (explaining that the

12  challenged instruction cannot merely be "undesirable, erroneous, or

13  even 'universally condemned'" -- it must violate some

14  constitutional right).  The instruction may not be judged in

15  isolation; rather, it must be considered in the context of the

16  instructions as a whole and the trial record.  See Estelle, 502

17  U.S. at 72.  The habeas court also considers "'whether there is a

18  reasonable likelihood that the jury has applied the challenged

19  instruction in a way' that violates the Constitution."  Id. at 72

20  (quoting Boyde v. California, 494 U.S. 370, 380 (1990).  "A

21  permissive inference violates the Due Process Clause only if the

22  suggested conclusion is not one that reason and common sense

23  justify in light of the proven facts before the jury."  Francis,

24  471 U.S. at 314-15.

25      In Petitioner's case, the jury was allowed to infer that

26  Rucker attempted to murder Watson from evidence that she threatened

27  a former boyfriend with a gun and stalked him.  The testimony of

28  David Yu and Carole Rucker establishes that the permissive

-49-

1   inference is constitutionally sound.

2       Yu testified that he dated Rucker over a two-and-a-half year

3   period, and as their relationship was ending, she appeared at his

4   door with a gun pointed at him, and stated, "'Please let me in.

5   You know I know how to use this.'"   (Lodgment No. 2, Rep.'s Tr.,

6   vol. 4, 821-22, 828.)   Over the next two years, Rucker harassed Yu

7   in various ways, including chasing him and a woman he was dating on

8   the freeway.   (Id. 830-33.)   He testified about a subsequent phone

9   conversation where she told him "if she can't have me, no one can."

10  (Id. at 834.)   Rucker does not dispute that when her relationship

11  with Yu was ending, she drove to his house and pulled her loaded

12  gun out of her purse.   (Lodgment No. 2, Rep.'s Tr., vol. 3, 592,

13  649-50.)   She acknowledged that she "harass[ed] the hell out of

14  [him.]"   (Id. at 593.)

15      Unlike a mandatory presumption which relieves the prosecution

16  of its burden of proof, the permissive inference in CALJIC No.

17  2.50.02 gives the jury discretion to use the information "along

18  with all other evidence."   California Jury Instructions:   Criminal

19  ("CALJIC") No. 2.50.02 (2008 ed.)   Furthermore, under the

20  instruction as given, the jurors were cautioned that they could not

21  rely solely on the evidence of Rucker's behavior towards Yu as

22  proof she committed the attempted murder.   (Lodgment No. 2, Rep.'s

23  Tr., vol. 4, 893-94.)   The Court presumes that the jury followed

24  the limiting instruction and did not assume that because Rucker

25  pulled a gun on Yu, she necessarily attempted to murder Watson by

26  shooting him.   See Weeks v. Angelone, 528 U.S. 225, 234 (2000)

27  (stating that juries are presumed to follow instructions);

28  Richardson v. Marsh, 481 U.S. 200, 206-07 (1987) (listing various

1  contexts where juries were presumed to follow limiting
2  instructions).

3       Additionally, Petitioner's claim fails when the jury
4  instructions are considered in their entirety.  At the beginning of
5  its instructions to the jury, the trial court read CALJIC No. 1.01
6  requiring that "[e]ach instruction must be considered as a whole
7  and in light of the other instructions that are given . . . ."
8  (Lodgment No. 2, Rep.'s Tr., vol. 4, 887.)  It then instructed the
9  jury on the elements of the charged offense of attempted murder,
10  stating that "[i]n order to prove attempted murder, each of the
11  following elements must be proved:  1) a direct but ineffectual act
12  was done by one person towards the killing of another human being[,
13  and] 2) the person committing that act harbored express malice
14  aforethought, namely, a specific intent to kill unlawfully another
15  human being."  (Id. at 899.)  The jury was told that "the
16  weight and significance, if any, of that prior offense involving
17  domestic violence is simply one factor that you may consider, along
18  with all the other evidence in the case . . . ."  (Id. at 894
19  (emphasis added).)  Nothing in CALJIC No. 2.50.02 permitted the
20  jury to convict Petitioner on anything less than a finding that the
21  prosecution proved the elements of the offense beyond a reasonable
22  doubt.

23       Taken in the context of the trial as a whole, CALJIC
24  No.2.50.02, as given by the court, did not create an impermissive
25  inference of guilt in violation of the Federal Constitution.  See
26  Estelle, 502 U.S. at 71-72.  Therefore, the California Supreme
27  Court's summary denial of this claim was not contrary to, or an
28  unreasonable application of, clearly established United States

07cv0364

1   Supreme Court law.   For these reasons, claim two should be **DENIED**.

2                   **3.   The Propensity Evidence**

3       In Rucker's Petition, she alleges in ground three that the

4   trial court violated her due process rights when it permitted

5   evidence of a prior domestic violence incident to prove her

6   disposition to commit the charged crime.   (Pet. 10-12.)   In ground

7   four, Rucker claims that her due process rights were violated when

8   the trial court gave jury instruction CALJIC NO. 2.50.02 because

9   its language suggests that a jury can find a defendant guilty of a

10   charged offense relying entirely on evidence of an uncharged

11   offense.   (Pet. 11-12.)

12       Petitioner does not address these claims in her Memorandum of

13   Points and Authorities because she acknowledges that the Ninth

14   Circuit in <u>Alberni v. McDaniel</u>, 458 F.3d 860, 864 (9th Cir. 2006),

15   recently determined that "claims relating to the propriety of the

16   introduction of propensity evidence [were] specifically reserved

17   for future decision by the Supreme Court of the United States in

18   <u>Estelle v. McGuire</u>, . . . . "   (Mem. P. & A. Supp. Pet. 1-2.)

19   Rucker raises the claims simply to preserve them should the Court

20   decide the question while her Petition is pending.   (<u>Id.</u> at 2.)

21       Respondent asserts that the claims should be denied because

22   they are not cognizable on a federal habeas corpus proceeding in

23   light of <u>Alberni</u>, 458 F.3d 864.   (Mem. P. & A. Supp. Answer 20-21.)

24       The parties are correct that the United States Supreme Court

25   has not determined whether propensity evidence violates the Due

26   Process Clause.   Indeed, in <u>Estelle</u>, the Court expressly left open

27   the question "whether a state law would violate the Due Process

28   Clause if it permitted the use of 'prior crimes' evidence to show

1  propensity to commit a charged crime." 502 U.S. at 75 n.5. In the

2  past, the Ninth Circuit had interpreted <u>Estelle</u> as providing that a

3  habeas petitioner can establish a federal due process violation by

4  showing that the state trial court's rulings were so prejudicial

5  that they rendered his trial fundamentally unfair. <u>Ortiz-Sandoval</u>

6  <u>v. Gomez</u>, 81 F.3d 891, 897 (9th Cir. 1996); <u>Jammal v. Van de Kamp</u>,

7  926 F.2d 918, 919 (9th Cir. 1991).

8        In <u>Alberni</u>, the Ninth Circuit recognized that every circuit,

9  in cases decided before AEDPA, has indicated that improper

10 introduction of evidence may violate federal due process if it

11 results in a fundamentally unfair trial. 458 F.3d at 865-66.

12 Nevertheless, the Court in <u>Estelle</u> specifically reserved ruling on

13 whether introduction of propensity evidence can give rise to a

14 federal due process violation. <u>Estelle</u>, 502 U.S. at 74-75. In

15 addition, it has denied certiorari at least four times in cases

16 raising the issue since <u>Estelle</u> was decided. <u>Alberni</u>, 458 F.3d at

17 866 n.1. Consequently, the right asserted "has not been clearly

18 established by the Supreme Court, as required by AEDPA." <u>Id.</u> at

19 867.

20       Accordingly, the state court's adjudication of the claim that

21 introduction of the prior acts evidence was a violation of federal

22 due process because it unfairly permitted the jury to find that

23 Rucker had a propensity to commit crimes similar to the ones with

24 which she was charged, was neither contrary to, nor involved an

25 unreasonable application of, clearly established federal law.

26 <u>Alberni</u>, 458 F.3d at 867. Similarly, Rucker's claim that CALJIC

27 No. 2.50.02 impermissibly allowed the jury to convict her of the

28 charged crime based entirely on evidence that she committed an

07cv0364

1 | uncharged act of domestic abuse fails because the state court's

2 | adjudication of the claim was neither contrary to, nor involved an

3 | unreasonable application of, clearly established federal law.  Id.

4 | The Court, therefore, **RECOMMENDS** that claims three and four be

5 | **DENIED**.

6 | V.    <u>EVIDENTIARY HEARING</u>

7 | In her Traverse, Rucker makes an alternative argument which

8 | should be addressed.  She argues that "[s]hould the Court determine

9 | that the state court record is insufficient to warrant the summary

10 | granting of the writ due to the failure of the prosecution to rebut

11 | the presumption of prejudice, . . . the Court should order an

12 | evidentiary hearing on the issues raised."  (Traverse 9.)  Rucker

13 | contends that because (1) the prosecution did not produce

14 | declarations from jurors two and nine, (2) the trial judge

15 | intimidated the foreperson into asserting his Fifth Amendment

16 | privilege, and (3) the court improperly permitted the foreperson to

17 | make a blanket claim of privilege to any questions, she is

18 | "entitled" to an evidentiary hearing.  (<u>Id.</u>)  As support for this

19 | argument, Petitioner cites <u>Morris v. Woodford</u>, 229 F.3d 775, 781

20 | (9th Cir. 2000), which involved claims for which Morris was never

21 | given an opportunity to develop a factual record in state court.

22 | (Traverse 9.)

23 | The Respondent argues that an evidentiary hearing is not

24 | permitted.  (Answer 2.)  "Petitioner is not entitled to an

25 | evidentiary hearing to resolve her claims because her claims are

26 | based on the state court record and she relies on the same facts as

27 | she did in the state courts."  (<u>Id.</u>)

28 | //

-54-

1    In <u>Earp v. Ornoski</u>, 431 F.3d 1158, 1166-67 (9th Cir. 2005),

2 the Ninth Circuit described the test for an evidentiary hearing

3 under AEDPA.  If the petitioner has "not failed to develop" the

4 record, the Court may "consider whether a hearing is appropriate or

5 required . . . ."  <u>Id.</u> (quoting <u>Insyxiengmay v. Morgan</u>, 403 F.3d

6 657, 669-70 (9th Cir. 2005)).

7    Here, a factual basis exists in the record for finding that

8 jurors two and nine injected extraneous evidence into the jury's

9 deliberations, and the evidence was discussed.  These facts are not

10 in dispute.  The state courts did not apply a presumption of

11 prejudice to the introduction of this evidence.  Consequently, the

12 presumption was not rebutted.  Because the Court finds the error

13 had a substantial and injurious effect on the verdict, Rucker is

14 entitled to habeas relief but is not entitled to further develop

15 the record.  Rucker's alternative request for an evidentiary

16 hearing is **DENIED**.

17 **VI.  CONCLUSION AND RECOMMENDATION**

18    For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the

19 district court issue an order:  (1) approving and adopting this

20 Report and Recommendation, and (2) directing that judgment be

21 entered granting the Petition on the subclaim that jurors two and

22 nine engaged in misconduct that gave rise to a presumption of

23 prejudice that was not rebutted and had a substantial and injurious

24 effect on the jury's verdict.  All other claims should be denied

25 for the reasons outlined.  Petitioner's alternative request for an

26 evidentiary hearing is **DENIED**.

27 //

28 //

1      **IT IS HEREBY ORDERED** that any written objections to this

2  Report must be filed with the Court and served on all parties **no**

3  **later than** June 18, 2008.   The document should be captioned

4  "Objections to Report and Recommendation."

5      **IT IS FURTHER ORDERED** that any reply to the objections shall

6  be filed with the Court and served on all parties **no later than**

7  July 2, 2008. The parties are advised that failure to file

8  objections within the specified time may waive the right to raise

9  those objections on appeal of the Court's order.   See Turner v.

10  Duncan, 158 F.3d 449, 455 (9th Cir. 1998).

11      **IT IS SO ORDERED.**

12  DATED:    June 2, 2008

                                                                Ruben B. Brooks
                                    United States Magistrate Judge

07cv0364