1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CAROLE ANN RUCKER,<br><br>                                    Petitioner,<br><br>          vs.<br><br><br>DEBORAH L. PATRICK<br><br>                                    Respondent. | CASE NO. 07cv0364 – IEG (RBB)<br><br>**ORDER:**<br><br>**(1) ADOPTING IN PART AND REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT (Doc. No. 7);**<br><br>**(2) DENYING THE PETITION FOR WRIT OF HABEAS CORPUS (Doc. No. 1); and**<br><br>**(3) ISSUING CERTIFICATE OF APPEALABILITY.** |

        On February 27, 2007, petitioner Carole Ann Rucker, a state prisoner proceeding through counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging her June, 2003 conviction for attempted murder.  (Doc. No. 1.)  This matter was referred to United States Magistrate Judge Ruben B. Brooks pursuant to 28 U.S.C. § 636(b)(1)(B).  On June 2, 2008, Magistrate Judge Brooks issued a Report and Recommendation ("Report") recommending the Court grant the petition for writ of habeas corpus as to petitioner's sub-claim that two female jurors committed misconduct.  Magistrate Judge Brooks recommended the Court deny the remaining claims of the petition.  Both parties have filed objections and replies.

        Following *de novo* review of petitioner's claims, the Court hereby denies the petition for writ of habeas corpus in its entirety, adopts the Report in part, and issues a certificate of appealability as to

07cv364

1   all claims.

2                                    **BACKGROUND**

3   **State Proceedings**

4           The Court hereby incorporates by reference the magistrate judge's accurate recitation of the

5   facts as determined by the California Court of Appeal.  (Report at 2-6.)  As the magistrate judge

6   noted, the Court presumes state court findings of fact to be correct.  In summary, a jury convicted

7   petitioner of attempted murder for shooting her ex-boyfriend, Bert Watson.  After dating petitioner

8   for two years, Watson ended the relationship and began to see other women in April of 2002.  On

9   May 29, 2002, petitioner and Watson spoke on the phone.  Petitioner asked if she could come over

10  to get her shoes from his condominium.  They drank several glasses of wine and began to engage in

11  sexual intercourse.  Petitioner began to cry, and they stopped.  Petitioner retrieved a gun from her

12  purse and fired four shots at Watson.  He fell to the ground, and petitioner walked over to him and

13  fired two shots at point blank range.  Petitioner then aimed the gun at her own head and fired twice,

14  but the gun was out of bullets.  Watson survived but was "lucky to be alive."  The police

15  apprehended petitioner in a parking lot in her apartment complex.  She aimed her empty gun at an

16  officer, and police responded by firing several times.

17          By information filed on October 4, 2002, the state charged petitioner with one count of

18  attempted murder, four counts of exhibiting a firearm in the presence of peace officers, and one

19  count of evading an officer.  The court granted a motion for judgment of acquittal as to all the

20  charges except for attempted murder and one count of exhibiting a firearm in the presence of a

21  peace officer.

22          At trial, petitioner admitted to shooting Watson.  She testified that although she consented

23  to intercourse with Watson, it hurt her.  This triggered her memories of being raped by other men,

24  and she experienced a dissociative episode.  The prosecution also offered evidence that petitioner

25  had a propensity to commit domestic violence.  David Yu testified at trial that petitioner had

26  threatened him with her gun when they stopped seeing each other in 1998.  Over the course of two

27  years, petitioner harassed Yu by, among other things, chasing him on the freeway, putting paint on

28  his car, and super-gluing his car door locks.  Yu obtained a restraining order against petitioner, and

1    the harassment stopped.

2          On June 17, 2003, the jury returned a guilty verdict on the attempted murder and firearm

3    exhibition counts.  The jury also found that petitioner personally discharged a firearm causing great

4    bodily injury, personally used a firearm, and personally inflicted great bodily injury.

5          On August 4, 2003, petitioner filed a motion for a new trial.   Petitioner based the motion in

6    part on claims of juror misconduct contained in a declaration by the jury foreperson.  The

7    foreperson stated in pertinent part:

8                During jury deliberations, the female juror with the blonde hair in the front
            row, juror #9 I believe, commented a number of times regarding the fact that she had
9            previously been raped and physically abused . . . . Her attitude towards the defendant
            seemed antagonistic and self-righteous in that since she had never resorted to using a
10           gun when she had been attacked, therefore the defendant should have acted
            similarly.  These comments were made to influence the rest of the jury panel who
11           seemed to rely on these statements as being relevant facts.  This juror said the
            defendant was not a normal person and did not behave in a normal fashion when she
12           reacted to the provocation in the manner in which she reacted.
                Juror #2 (female with black hair) mentioned during deliberations that she had
13           been under psychiatric care.  She also stated she had been physically attacked by a
            male in the past.  She used these events in her past to try and persuade the jurors that
14           the defendant must be guilty of attempted murder due to the fact that this juror did
            not react to an attack in the manner in which the defendant reacted.
15           . . . .
                Prior to the verdict, I logged on to the Internet and went to the Google
16           website whereupon I looked up the name of the defendant, Carole Ann Rucker.  I
            read what information was available.  On the second day of testimony, I noticed the
17           San Diego Union-Tribune headline, "She Shot Him 4 Times But Was It Murderous
            Intent?" and read the article.  The headline seemed biased and affected me
18           negatively.

19   (Court Transcript (hereinafter "CT") at 190-91.)

20         The court held hearings on the motion for new trial on August 5 and August 27, 2008.  At

21   the second hearing, the court denied the motion for new trial.

22         Petitioner appealed her conviction on several grounds, including jury misconduct.  The

23   California Court of Appeal affirmed in a partially published decision on February 15, 2005.

24   (Lodgment No. 7.)  The California Supreme Court denied petitioner's petition for review without

25   citation or comment on May 18, 2005 (Lodgment No. 11) and petitioner's petition for writ of

26   habeas corpus without citation or comment on July 26, 2006 (Lodgment No. 13).

27   //

28   //

1  **Federal Proceedings**

2      Petitioner filed a timely petition for writ of habeas corpus in this Court on February 27,

3  2007.  (Doc. No. 1.)  Petitioner claims the trial court violated her right to due process of law by (l)

4  denying her motion for new trial on the basis of jury misconduct; (2) instructing the jury it could

5  draw a permissive inference of guilt based on petitioner's prior incidents of domestic violence; and

6  (3) admitting evidence of petitioner's propensity to commit domestic violence.  (Doc. No. 1.)

7  Respondent filed an answer on May 7, 2007.  (Doc. No. 5.)  On June 28, 2007, petitioner filed a

8  traverse.  (Doc. No. 6.)  Magistrate Judge Brooks issued his Report on June 2, 2008.  (Doc. No. 7.)

9  Respondent filed objections to the Report on June 17, 2008.  (Doc. No. 8.)  After an extension of

10  time, petitioner filed objections to the Report on July 2, 2008.  (Doc. No. 13.)  Petitioner and

11  respondent each filed replies.  (Doc. Nos. 14 & 15.)

12                                    **DISCUSSION**

13  **I.       Legal Standards**

14      The magistrate judge set forth the appropriate standard of review with regard to the petition.

15  (Report at 5-7.)  Where, as here, the California Supreme Court summarily denied petitioner's

16  request for review, the Court analyzes the California Court of Appeal's opinion as the "last

17  reasoned decision" on the merits of petitioner's case.  Ylst v. Nunnemaker, 501 U.S. 797, 803-04

18  (1991); Medina v. Hornung, 386 F.3d 872, 877 (9th Cir. 2004).  A petition under 28 U.S.C. § 2254

19  can be granted only if the California courts decided petitioner's case in a manner that was either

20  "contrary to, or involved an unreasonable application of, clearly established Federal law, as

21  determined by the Supreme Court of the United States," or "based on an unreasonable

22  determination of the facts in light of the evidence presented in the state court proceeding."  28

23  U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 403, 412-13 (2000).

24      The Court reviews de novo those portions of the Report to which petitioner objects.  28

25  U.S.C. § 636(b)(1)(C); Holder v. Holder, 392 F.3d 1009, 1022 (9th Cir. 2004).

26  //

27  //

28  //

1    **II.        Juror Misconduct**

2            After trial, petitioner filed a motion for new trial supported by a declaration of the jury

3    foreperson.  The foreperson stated he read on-line news articles about the case and they influenced

4    him.  The foreperson also stated that during deliberations, two female jurors discussed their

5    previous experiences as victims of rape and assault.

6            At the first hearing, the trial court expressed disbelief in the foreperson's truthfulness.  The

7    court noted "this particular gentleman during the trial made every effort at every opportunity to

8    make sure that we all knew he was there or not there, to now inject himself and be the genesis of

9    yet another controversy surrounding this case is not surprising.  Although troubling and likely

10   criminal, it is not surprising." (Reporter's Transcript (hereinafter "RT") at 1020.)

11           At the second hearing, the foreperson appeared with counsel and, invoking his Fifth

12   Amendment right against self-incrimination, refused to testify.  The trial court considered

13   declarations from four other jurors filed by the government in opposition to the motion.  (CT at

14   209-22.)  These declarations contradicted the foreperson's declaration in nearly all respects.  Three

15   of the jurors confirmed the foreperson's assertion that two female jurors, numbers two and nine,

16   discussed prior physical assaults in the context of evaluating the reasonableness of petitioner's

17   conduct.  (CT at 212, 219 & 222.)  The prosecution also submitted evidence that the foreperson

18   visited petitioner in prison shortly after the verdict and shortly before the new trial hearing.  (CT at

19   223-25.)  After oral argument, both sides submitted on the papers.  (RT at 1047.)

20           The court denied the motion, finding the foreperson's allegations were not credible and

21   finding petitioner's trial was fair.  Petitioner claims the court unreasonably determined the facts and

22   unreasonably applied federal law in failing to find misconduct by either the foreperson or jurors

23   two and nine.  Because the issues raised are distinct, the Court treats these as separate sub-claims.

24           A.        The Foreperson's Exposure to News Articles

25           Petitioner claims the trial court violated her due process rights by failing to hold an

26   evidentiary hearing on her allegations of juror misconduct.  Petitioner also argues the court should

27   have applied a presumption of prejudice under Remmer v. United States, 347 U.S. 227, 228 (1954)

28   based on the foreperson's exposure to extraneous information from on-line news sources.

//

1          1.      The Magistrate Judge's Report

2          The magistrate judge accurately summarized the trial court's two hearings.  The magistrate

3   judge concluded that because the foreperson did not discuss the articles with the jury, no

4   "extraneous" information was injected into the jury deliberations and thus no presumption of

5   prejudice was warranted.  The magistrate judge also found the trial court's determination that the

6   foreperson was not credible was not clearly erroneous, and that failure to further develop the factual

7   record was not contrary to or an unreasonable applicable of federal law as declared by the Supreme

8   Court.

9          2.      Petitioner's Objections

10         Petitioner argues the magistrate judge should not have deferred to the state court's factual

11  findings because they were "unreasonably determined" under 28 U.S.C. § 2254(d).  Petitioner

12  argues under Taylor v. Maddox, 366 F.3d 992 (9th Cir. 2004), the trial court should have held an

13  evidentiary hearing.

14         Petitioner further argues a presumption of prejudice applies because the foreperson

15  consulted on-line news articles about the case, even if he never discussed those sources during

16  deliberations.  Petitioner argues the bias of a single juror violates her right to a fair trial under

17  Estrada v. Scribner, 512 F.3d 1227, 1239-40 (9th Cir. 2008).

18         3.      Respondent's Reply

19         Respondent argues the factual findings of the trial court are entitled to deference because

20  the court did not use a flawed procedure and gave petitioner the opportunity to adequately develop

21  the facts.  Respondent notes that in the Ninth Circuit, trial courts have discretion in deciding

22  whether an evidentiary hearing is appropriate.  The trial court must consider "the content of the

23  allegations, the seriousness of the alleged misconduct or bias, and the credibility of the source."

24  United States v. Saya, 247 F.3d 929, 934-35 (9th Cir. 2001).  Because the foreperson was not

25  credible, respondent argues the trial court properly rejected his allegations of misconduct.

26         4.      Analysis

27                 a.      Standard of Review

28         As the magistrate judge correctly noted, the California Court of Appeal denied petitioner's

claim of juror misconduct by the foreperson in its decision on direct review.  The Court of Appeal

- 6 -                                                          07cv364

1   found the trial court's decision "amply supported by the declarations of the other jurors who

2   disputed the foreperson's version of what had occurred, by his recalcitrance in the jury room, by the

3   foreperson's visits to Rucker in jail, and by the court's own observations of the foreperson."

4   (Lodgment 7 at 22.)  In the alternative, the court concluded "even if we were to agree" and apply a

5   presumption of prejudice, "[a]ny presumption of prejudice that arose is clearly rebutted by the

6   newspaper article itself."  (Id.)

7         Accordingly, the Court must determine whether the California Court of Appeal's decision

8   was based on an unreasonable determination of the facts, or was contrary to, or an unreasonable

9   application of, clearly-established federal law as articulated by the Supreme Court.

10                b.    Trial Court's Failure to Hold an Evidentiary Hearing

11        Petitioner incorrectly argues the trial court must hold an evidentiary hearing with live

12  witnesses when presented with evidence of juror misconduct.  The Ninth Circuit has expressly

13  found failure to hold such a hearing sua sponte is not contrary to, or an unreasonable application of,

14  clearly established federal law.  See Sims v. Rowland, 414 F.3d 1148, 1153 (9th Cir. 2005).

15        In this case, petitioner received two hearings on her motion for new trial.  The only witness

16  petitioner attempted to call, the foreperson, refused to testify.  Petitioner did not request any further

17  evidentiary hearing.  During the initial motion hearing, the trial court indicated its willingness to

18  receive testimony or other evidence on the jury misconduct issues, and granted petitioner a

19  continuance.  (RT at 1020-22.)  After oral argument at the second motion hearing, both sides

20  submitted the issue to the trial court.  (RT at 1047.)  Thus to the extent petitioner argues the court

21  should have called other witnesses or conducted further investigation sua sponte, petitioner's

22  argument is foreclosed by the Ninth Circuit's decision in Sims.

23        Moreover, the trial court would have acted within its discretion in denying any request for

24  an evidentiary hearing.  "An evidentiary hearing is not mandated every time there is an allegation

25  of juror misconduct or bias.  Rather, in determining whether a hearing must be held, the court must

26  consider the content of the allegations, the seriousness of the alleged misconduct or bias, and the

27  credibility of the source."  United States v. Saya, 247 F.3d 929, 934-35 (9th Cir. 2001)

28  (citing United States v. Angulo, 4 F.3d 843, 847 (9th Cir. 1993).)

//

1    In this case, the trial court considered all three factors discussed in <u>Saya</u>.  The foreperson's

2  allegations that he consulted on-line news sources were not especially troubling.  The only specific

3  article mentioned in his declaration was not prejudicial.  (CT at 209; Lodgment 7 at 22-23.)

4  Federal courts often hold a juror's exposure to non-prejudicial news articles does not require a new

5  trial.  <u>U.S. v. Caro-Quintero</u>, 769 F. Supp. 1564, 1576 (C.D. Cal. 1991) (finding jurors' exposure to

6  headlines of pertinent newspaper stories could not have affected the verdict); <u>Newsome v. Ryan</u>,

7  No. 05cv1523 IEG (RBB), 2007 WL 433282 (S.D. Cal. Jan. 24, 2007) (finding jurors' exposure to

8  newspaper articles was not prejudicial).

9    Most importantly, the court found the foreperson lacked any credibility.  The court

10 considered declarations by four other jurors which contradicted the foreperson's declaration as to

11 nearly every assertion.  (RT at 1036.)  The other jurors' declarations were consistent, suggesting the

12 foreperson's wildly divergent view was not accurate.  The trial court had the benefit of observing

13 the foreperson throughout the trial and during deliberations, and concluded "this particular

14 gentleman during the trial made every effort at every opportunity to make sure that we all knew he

15 was there or not there, to now inject himself and be the genesis of yet another controversy

16 surrounding this case is not surprising." (RT at 1020.)  While the foreperson claimed he did not

17 believe he could say he disagreed with the verdict when the court polled each juror, the other jurors

18 stated they discussed polling near the end of their deliberations and all understood they could

19 disagree.  (RT at 1036.)  The foreperson's two visits to petitioner in prison shortly after the verdict

20 and shortly before the new trial hearing provided further evidence that his allegations were suspect.

21 (RT at 1036.)

22    In summary, the trial court considered all of the evidence submitted by petitioner, and

23 petitioner did not request a further hearing with live witnesses.  Even if petitioner had requested a

24 further evidentiary hearing, the trial court could have decided not to hold a hearing based on the

25 foreperson's lack of credibility.  Accordingly, the California Court of Appeal's decision affirming

26 the denial of the new trial motion without an evidentiary hearing was not contrary to, or an

27 unreasonable application, of clearly established federal law.

28 //

//

1

c.      Deference to the State Courts' Factual Determinations

2        Under 28 U.S.C. § 2254(e)(1), the Court presumes the state court's factual findings to be

3  correct.  Petitioner argues the Court should not defer to those findings because the trial court did

4  not hold an evidentiary hearing.  See Taylor v. Maddox, 366 F.3d 992, 1001 (9th Cir. 2004) ("If,

5  for example, a state court makes evidentiary findings without holding a hearing and giving

6  petitioner an opportunity to present evidence, such findings clearly result in an 'unreasonable

7  determination of the facts.'").  Petitioner presented evidence at two hearings and never indicated

8  she needed further opportunities to develop those facts.  The court's process was not flawed.

9  Moreover, the trial court's determination of the facts was not unreasonable.  As described above,

10 the trial court had ample evidence on which to base a determination that the foreperson lacked

11 credibility.[1]  The "trial judge's impression of the impact of the extrinsic evidence must be given

12 'special deference' since 'the trial judge is uniquely qualified to appraise the probable effect of

13 information on the jury, the materiality of the extraneous material, and its prejudicial nature.'"

14 Diggs v. Pliler, No. 99-20659 RMW, 2006 WL 2642526 at *20 (N.D. Cal. Sept. 14, 2006) (quoting

15 United States v. Plunk, 153 F.3d 1011, 1024 (9th Cir. 1998)).

16       Accordingly, the Court defers to the California Court of Appeal's factual findings because

17 they were determined in a reasonable manner and are based on a reasonable view of the evidence.

18

d.      Presumption of Prejudice

19       Petitioner is correct that under Remmer v. United States, 347 U.S. 227, 228 (1954), the

20 court must presume prejudice when a juror receives extraneous information, such as newspaper

21 articles about the case.  The California Court of Appeal, however, affirmed the trial court's decision

22 not to presume prejudice because the foreperson's allegations were not credible.  The court

23 explained:

24              While it is true a presumption of prejudice arises when a juror reads an article about
              the case during the trial, that presumption arises only if the juror is found credible,
25              that is, if the court believes the juror read a newspaper article.  Here, the court found

26 ─────────────────

27       [1]In contrast, in Taylor, the trial court offered an incoherent explanation for not believing the
    defendant's testimony on his motion to suppress.  366 F.3d at 999.  The trial court also unreasonably
    credited the testifying police officer, although the officer failed to answer many key questions.  Id. at
28  1004.  The trial and appellate courts also ignored entirely the pertinent testimony of another witness,
    who corroborated the defendant's story and had no reason to lie.  Id. at 1008.

07cv364

1

2

3

> the jury foreperson was not credible.  Its decision was amply supported by the declarations of the other jurors who disputed the foreperson's version of what had occurred, by his recalcitrance in the jury room, by the foreperson's visits to Rucker in jail, and by the court's own observations of the foreperson.

4

(Lodgment 7 at 22.)  This decision reasonably applied <u>Remmer</u> and is consistent with the practice

5

of federal courts.  <u>See</u> <u>U.S. v. Caro-Quintero</u>, 769 F. Supp. 1564, 1574 (C.D. Cal. 1991) ("The first

6

step of the analysis requires the defendants to prove by a preponderance of credible evidence that

7

the jury was exposed to extrinsic evidence. . . . There is no presumption that the jury was exposed

8

to extrinsic information.  In fact, there is an opposite presumption that the jury performed its duties

9

faithfully and diligently.").  <u>Remmer</u> does not require courts to presume prejudice based on events

10

that never occurred.  Accordingly, the California Court of Appeal's decision was not contrary to, or

11

an unreasonable application of, clearly established federal law.

12

     5.   <u>Conclusion</u>

13

     In summary, the state court's failure to require live testimony and to further develop the

14

factual record was not contrary to, nor an unreasonable application of, clearly established federal

15

law.  The state courts reasonably applied <u>Remmer</u> in declining to presume prejudice.  The Court

16

therefore adopts the Report, rejects petitioner's objections, and denies the petition as to petitioner's

17

claims with regard to the jury foreperson.

18

     B.   <u>The Female Jurors' Prior Experiences</u>

19

     Petitioner also argues the discussions by jurors two and nine about their personal

20

experiences with rape and assault injected extraneous information into the deliberative process,

21

depriving petitioner of due process of law.  The foreperson's lack of credibility does not resolve

22

this claim because the other jurors' declarations confirmed that during deliberations, juror nine

23

discussed being raped and juror two discussed being physically attacked by a man.

24

     1.   <u>The Magistrate Judge's Report</u>

25

     The magistrate judge recommended the Court grant the writ as to this sub-claim.  The

26

magistrate judge noted it is undisputed that jurors two and nine "discussed extraneous personal

27

experiences during deliberations."  (Report at 30.)  The magistrate judge found the state court

28

should have applied a presumption of prejudice, placing the burden on the prosecution to show the

discussions could not have been prejudicial.  (Report at 32.)  The magistrate judge then concluded

1    the discussion was likely to have had a substantial and injurious impact on the verdict.  (Report at

2    32-35.)

3            2.    Respondent's Objections

4            Respondent argues the Court is barred by Rule 606(b) of the Federal Rules of Evidence

5    from considering any evidence that the jurors discussed their personal experiences during

6    deliberations.  Respondent argues personal experiences are not "extraneous" information and thus

7    evidence of such a discussion is inadmissible.  Respondent argues jurors are expected to bring their

8    life experiences into their jury service.  As respondent explains, the jurors "did not consult any

9    extraneous sources, did not conduct any extraneous tests, did not hold themselves out as experts,

10   did not disobey the trial court, and did not use their experiences to contradict the evidence at trial."

11   (Respondent's Objections at 10.)  Respondent also argues even if this Court finds the jurors

12   committed misconduct, the state courts' finding of no misconduct was not contrary to, or an

13   unreasonable application of, clearly established federal law.  Finally, respondent argues any error

14   was harmless because the opinions in the jurors' statements could have been inferred from the

15   evidence.

16           3.    Petitioner's Reply

17           In reply, petitioner argues jurors may be impliedly biased if they "had been personally

18   involved in a situation involving a similar fact pattern."  (Petitioner's Reply to Respondent's

19   Objections, <u>citing</u> <u>Estrada v. Scribner</u>, 512 F.3d 1227, 1240 (9th Cir. 2008).)  Petitioner also cites a

20   California Supreme Court decision holding a juror "should not discuss an opinion explicitly based

21   on specialized information obtained from outside sources.  Such injection of external information in

22   the form of a juror's own claim to expertise or specialized knowledge of a matter at issue is

23   misconduct."  <u>In re Malone</u>, 12 Cal. 4th 935, 963 (1996).  Petitioner argues the Court should find

24   the jurors' discussion of prior rape and assault experiences injected extrinsic evidence into the

25   deliberations, and therefore a presumption of prejudice applies under <u>Seahawk Seafoods, Inc. v.</u>

26   <u>Alyeska Pipeline Service Co.</u>, 206 F.3d 900, 906 (9th Cir. 2000).

27   //

28   //

1      4.      Analysis

2              a.      The Trial Court's Decision

3      The trial court found the foreperson's allegations that he read news articles more troubling

4  than the jurors' discussion of "personal experiences."  (RT at 1022.)  The court explained the

5  discussion "to me is not a major issue . . . . [and is] not going to be the deal-breaker for me . . . there

6  just isn't enough based on that."  (RT at 1022-23.)  When petitioner's counsel again mentioned the

7  jurors' experiences, the court interrupted and stated "I'm not suggesting these are not issues that are

8  problematic.  The question is whether or not this woman got a fair trial, whether or not this jury

9  deliberated in a meaningful way, gave her the read that she was entitled to based on the evidence."

10  (RT at 1037.)  The court eventually concluded "I find nothing to indicate that there was

11  misconduct. . . .I'm not finding there was any juror misconduct, frankly, I believe there was none."

12  (RT at 1044.)  The court did not make any other comments about the two jurors' discussion of their

13  personal experiences.

14              b.      Standard of Review

15      In affirming petitioner's conviction, the California Court of Appeal also focused on the

16  foreperson's consultation of on-line news articles and did not mention the discussion by jurors two

17  and nine.  (Lodgment 7 at 19-23.)  The California Supreme Court decision silently denied

18  petitioner's petition for review.  (Lodgment 11.)  Because none of the state court decisions

19  furnishes a basis for denying this claim other than it was not misconduct, the Court must

20  independently review the record.  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

21              c.      Admissibility of the Evidence under Rule 606(b)

22      Initially, the Court must determine what evidence to consider.  The Court defers to the

23  factual findings of the California Court of Appeal, and thus rejects the foreperson's declaration as

24  not credible.  The trial court and the California Court of Appeal, however, did not make any

25  findings regarding the declarations by the other jurors.  Accordingly, the Court will consider these

26  declarations insofar as they are admissible under Rule 606(b) of the Federal Rules of Evidence.

27      As the magistrate judge correctly noted, Rule 606(b) applies to claims, such as petitioner's,

28  brought under 28 U.S.C. § 2254.  McDowell v. Calderon, 107 F.3d 1351, 1367 (9th Cir. 1997)

(vacated in part on other grounds by 130 F.3d 833 (9th Cir. 1998)).  Rule 606(b) states in pertinent

1  part:

2        Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as
        to any matter or statement occurring during the course of the jury's deliberations or
3        to the effect of anything upon that or any other juror's mind or emotions as
        influencing the juror to assent to or dissent from the verdict or indictment or
4        concerning the juror's mental processes in connection therewith. But a juror may
        testify about (1) whether <u>extraneous prejudicial information</u> was improperly brought
5        to the jury's attention, (2) whether any outside influence was improperly brought to
        bear upon any juror, or (3) whether there was a mistake in entering the verdict onto
6        the verdict form. A juror's affidavit or evidence of any statement by the juror may
        not be received on a matter about which the juror would be precluded from
7        testifying.

8  Fed. R. Evid. 606(b) (emphasis added).

9        It is undisputed that under this rule, the Court may not consider what effect the discussion

10  about the personal life experiences or jurors two and nine had on the minds of the jurors.  Less clear

11  is whether the Court may even consider the jurors' assertion that jurors two and nine mentioned

12  these experiences during deliberations.  Several courts have found discussion of personal

13  experiences is not "extraneous evidence" under Rule 606(b).  <u>See, e.g.</u>, <u>Marquez v. City of</u>

14  <u>Albuquerque</u>, 399 F.3d 1216 (10th Cir. 2005) ("A juror's personal experience, however, does not

15  constitute 'extraneous prejudicial information.'"); <u>U.S. v. Hayat</u>, No. 05-cr-240-GEB, 2007 WL

16  1454280 at *10 (E.D. Cal. May 17, 2007) ("Since [the juror's] statements comprised her non-

17  extraneous background experiences and 'related merely to [her] own internal mental processes'

18  concerning jury deliberation issues, they constituted intrinsic statements involved with matters

19  internal to the jury deliberation process.  Statements regarding such matters are not admissible

20  under Rule 606(b) and are insufficient to support Hayat's motion.").

21        The question of whether such a discussion was "extraneous," however, is closely connected

22  to whether the discussion violated petitioner's constitutional rights.  <u>See</u> <u>Estrada v. Scribner</u>, 512

23  F.3d 1227, 1238 (9th Cir. 2008) (reversing district court's decision excluding, under Rule 606(b),

24  evidence that a juror discussed his mother's murder and his consequent desire for longer sentencing

25  during deliberations, and finding the jury's consideration of extrinsic evidence violated defendant's

26  constitutional rights).  The Court will therefore assume it may consider the discussion of these

27  personal life experiences, in order to reach the question of whether the discussion violated

28  petitioner's constitutional rights.

//

07cv364

1          d.      Petitioner's Due Process Rights

2          The Supreme Court's decision in <u>Turner v. Louisiana</u>, 379 U.S. 466 (1965) provides the

3   clearly-established law which applies to this case.  In <u>Turner</u>, the Court explained "[t]he

4   requirement that a jury's verdict 'must be based upon the evidence developed at the trial' goes to

5   the fundamental integrity of all that is embraced in the constitutional concept of trial by jury." <u>Id.</u> at

6   472 (citations omitted).  "In the constitutional sense, trial by jury in a criminal case necessarily

7   implies at the very least that the 'evidence developed' against a defendant shall come from the

8   witness stand in a public courtroom where there is full judicial protection of the defendant's right of

9   confrontation, of cross-examination, and of counsel." <u>Id.</u> at 472-73.  Although <u>Turner</u> concerned

10  close and continuing contacts between the jurors and trial witnesses outside of the courtroom, the

11  Ninth Circuit has held <u>Turner</u> clearly establishes that a conviction must be based solely on evidence

12  presented at trial.  In <u>Fields v. Brown</u>, the Ninth Circuit explained "[t]he core principle is well-

13  settled: evidence developed against a defendant must come from the witness stand." 503 F.3d 755,

14  779 (9th Cir. 2007) (en banc); <u>see also</u> <u>Grotemeyer v. Hickman</u>, 393 F.3d 871, 876-77 (9th Cir.

15  2004) (citing <u>Turner</u>).  Because petitioner contends her conviction was based on evidence that was

16  not presented at trial, <u>Turner</u> is the clearly-established federal law on point.[2]

17          e.      Juror Life Experiences

18          In <u>Grotemeyer v. Hickman</u>, 393 F.3d 871 (9th Cir. 2004), the Ninth Circuit Court of

19  Appeals considered at length whether jurors inject "extrinsic evidence" into deliberations by

20  discussing their previous life experiences.  In that case, the defendant was charged with assaulting

21  and sodomizing his neighbor.  The "seriously bizarre" facts included the victim's testimony that she

22  met the defendant while he was nailing the door of his own apartment shut.  <u>Id.</u> at 873-74.  A

---

[2]Although petitioner cites several decisions regarding juror misconduct, these decisions do not relate to her claim.  Petitioner cites <u>Remmer v. United States</u>, 347 U.S. 227 (1954), <u>Mattox v. United States</u>, 146 U.S. 140, 142 (1892), and <u>United States v. Armstrong</u>, 654 F.2d 1328 (9th Cir. 1981), which apply a presumption of prejudice in cases where communications about the case occur between a juror and a third party.  Neither the Supreme Court nor the Ninth Circuit has applied such a presumption in a case of intra-jury communications regarding juror life experiences.

Similarly, <u>Rushen v. Spain</u>, 464 U.S. 114 (1983), and <u>Smith v. Phillips</u>, 455 U.S. 209 (1982), involved implied juror bias, which is not an issue in this case.  Petitioner does not claim that either juror two or juror nine misrepresented her experiences during voir dire.  Accordingly, petitioner's citations to findings of implied bias in <u>Estrada v. Scribner</u>, 512 F.3d 1227, 1240 (9th Cir. 2008), and <u>United States v. Eubanks</u>, 591 F.2d 513, 516-17 (9th Cir. 1979), are inapposite.  (See Petitioner's Reply to Respondent's Objections at 3.)

physician on the jury explained to the other jurors during deliberations that she had "been though this before" and knew the defendant was guilty because his actions indicated mental illness and his mental illness caused him to attack the victim.  The physician-juror also assured the rest of the jury that the defendant would receive mental health care as a part of his sentence.

The Ninth Circuit found no juror misconduct as a matter of federal constitutional law.  Id. at 877.  The court held "a juror's past personal experiences may be an appropriate part of the jury's deliberations."  Id. at 879 (citations omitted).  The court recognized jurors cannot make credibility determinations "without some understanding, based on past personal experience, of the circumstances of the witnesses. . . .  Often, jurors identify lies by comparing the testimony, to the extent it deals with the familiar, with what they already know to be true."  Id.[3]  The court viewed this as an advantage of trial by jury:

> Fortunately, jurors are more diverse in their experiences than [judges] are.  That these experiences include the practice of medicine, as well as the practice of the varied types of conduct of the witnesses in this case, is all the more helpful.  Ideally, at least someone on a jury of twelve will be able to contribute to the rest of the jury some useful understanding about whatever evidence comes up.  It is probably impossible for a person who has highly relevant experience to evaluate the credibility of witnesses without that experience bearing on the evaluation.  Were we to require the impossible and prohibit jurors from relying on relevant, past personal experience, about all we would accomplish would be to induce jurors to lie about it when questioned afterward, unless we limited jury participation to the most unworldly and ignorant individuals.

Id. at 880.  The court also held the Remmer presumption of prejudice did not apply "because no impermissible extrinsic evidence was discussed."  Id. at 880-81.

District courts applying Turner and Grotemeyer to petitions for the writ of habeas corpus under Section 2254 have held a broad range of personal life experiences may be discussed by jurors during deliberations without violating the defendant's constitutional rights.  In one common fact pattern, a juror familiar with guns explains to the rest of the jury the relevance of evidence introduced at trial about the gun and the impact of that evidence on intent.  The district courts have

---

[3]The court quoted an interesting example from Wigmore:

> For example, Wigmore cites a case that a prosecutor lost because his witness testified that a "ready-made pine door" cost ten dollars.  As the foreman of the jury – a carpenter by trade–explained, "'Well, he said ten dollars – and I knew he was a liar.  A door like that don't cost but four-fifty!'"

Grotemeyer, 393 F.3d at 879 (citations omitted).

1  universally held this is not misconduct.[4]  Similarly, jurors may discuss pertinent stories from their

2  professions,[5] personal medical experiences,[6] experiences with street and prescription drugs,[7] or

3  accidental injuries[8] in deliberations without depriving the defendant of due process of law under

4  Turner.

5              f.        Decisions Viewing Life Experiences as Extrinsic Evidence

6              Although the principle enunciated in Grotemeyer has been broadly applied, some courts

7  have found juror life experiences constitute extrinsic evidence.  In Estrada v. Scribner, 512 F.3d

8  1227, 1238 (9th Cir. 2008), the Ninth Circuit held references by two jurors to their own experiences

9  with repeat offenders, and consequent desire for a more serious sentence, constituted "extrinsic

10

11

---

12      [4]See Levinston v. Terhune, No. 02-01969 RMW, 2006 WL 2583676 (N.D. Cal. Sept. 7, 2006)
     (finding no misconduct where juror explained that the "single action" weapon had to be cocked
13   between firings, thus indicating premeditation by the defendant); Villa v. Mitchell, No. 02-1302 DFL,
     2006 WL 707363 (E.D. Cal. March 17, 2006) (finding no misconduct where jurors explained outside
14   knowledge related to jammed guns, thus undermining the defense's position); Williams v. LaMarque,
     No. 02-0307 PJH, 2005 WL 2463906 (N.D. Cal. Oct. 4, 2005) (finding no misconduct where jurors
15   explained a revolver was unlikely to go off accidentally, as argued by the defense, because cocking
     the gun requires force).
16
        [5]For example, a juror in the mortgage industry does not commit misconduct when she shares
17   her experience with credit ratings and FICO scores in explaining why the jury should not believe the
     banker-defendants, who allegedly gave unwarranted loans to the city treasurer in a quid pro quo
18   arrangement.  U.S. v. Holck, 398 F. Supp. 2d 338 (E.D. Pa. 2005).  A juror who works as a school
     janitor and uses his expertise regarding gangs to interpret the evidence in a gang-related case similarly
19   does not commit misconduct.  Ching Truong v. Sisto, No. 06-1206-ODW, 2008 WL 1847197 (C.D.
     Cal. Apr. 24, 2008).
20
        [6]The court found no juror misconduct when a juror prepared a written statement at home about
21   the impact of a disease on her life and then read it to the other jurors to address the defendant's
     statements about caring for his mother, who also suffered from that disease.  U.S. v. Hayat, No. 05-cr-
22   240-GEB, 2007 WL 1454280 (E.D. Cal. May 17, 2007); see also Andre v. Waddington, No. 06-503-
     JCC, 2007 WL 1577760 (W.D. Wash. May 30, 2007) (holding juror permissibly discussed his family
23   member's experiences with ADD in assessing the credibility of a witness).

24      [7]In one case, a juror did not commit misconduct when he contradicted the defense's expert
     testimony that a witness had an unreliable memory due to crack cocaine use by reference to his own
25   experiences.  Diggs v. Pliler, No. 99-20659 RMW, 2006 WL 2642526 (N.D. Cal. Sept. 14, 2006); see
     also Puente v. Mitchell, No. 02-4129 JSW, 2006 WL 618595 (N.D. Cal. Mar. 10, 2006) (holding juror
26   permissibly discussed prior use of the prescription drugs found in the system of victims whom
     defendant argued died accidentally).
27
        [8]Martin v. Henry, No. 03cv1336 DMS, 2007 WL 628039 (S.D. Cal. Feb. 12, 2007)  (finding
28   no misconduct where juror used personal experiences with a family member falling out of a window
     to assess whether victim's injuries could have been caused accidentally, and thus determine whether
     or not the defendant was telling the truth).

1    evidence" which the jury should not have considered under clearly established federal law.[9]  This

2    decision is consistent with an exception noted in the <u>Grotemeyer</u> decision: a juror's "speculation

3    about likely sentencing" based on personal experiences does constitute extrinsic evidence.

4    <u>Grotemeyer</u>, 393 F.3d at 880.  Because the alleged misconduct in this case does not relate to

5    sentencing or the threat of future crimes by the defendant, <u>Estrada</u> does not apply.[10]

6        Petitioner has also cited two decisions from the state courts of Hawaii.  <u>See</u> <u>State v. LaRue</u>,

7    68 Haw. 575 (1986) (finding court violated the defendant's right under Hawaii state constitution to

8    due process in denying new trial where juror based her belief in a young witness's accurate

9    recollection of sexual molestation on the juror's personal experiences, concealed during voir dire);

10    <u>State v. Adams</u>, 10 Haw. App. 593 (Haw. Ct. App. 1994) (finding juror misconduct where juror lied

11    about previous sexual assaults and then explained her experiences with such assaults in order to

12    support rape case against defendant).  Because these decisions do not reflect clearly-established

13    federal law, they do not support petitioner's claim for federal habeas relief under 28 U.S.C. § 2254.

14        Petitioner's citation to <u>In re Malone</u>, 12 Cal. 4th 935 (1996), is also unavailing because that

15    California Supreme Court decision interprets state law.  <u>See</u> <u>Grotemeyer</u>, 393 F.3d at 877 (finding

16    no misconduct as a matter of federal constitutional law, despite California state court's finding of

---

18      [9]One juror in <u>Estrada</u> discussed his personal experiences when a convicted felon released from prison killed an individual at his foster home in pressing for conviction on the more serious offense, second degree murder, rather than manslaughter.  He believed the defendant would kill again if he were released into society.  512 F.3d at 1233, n.5.  Another juror discussed the murder of his mother and his belief that only a long prison term would protect others victims from the defendant.  <u>Id.</u> at 1234 n.6.

21      [10]The court in <u>United States v. Navarro-Garcia</u>, 926 F.2d 818 (9th Cir. 1991) also acknowledged exceptions to the general rule:

> a juror's past personal experiences may be an appropriate part of the jury's deliberations. . . . Nevertheless, in some instances a juror's personal experiences may constitute extrinsic evidence.  This is the case when a juror has personal knowledge regarding the parties or the issues involved in the litigation that might affect the verdict.  <u>See</u> <u>Hard</u>, 812 F.2d at 486 (involving a juror who was allegedly a former employee of the defendant railroad, and who allegedly had personal knowledge of the railroad's settlement practices).  It is also the case if the jury considers a juror's past personal experiences in the absence of any record evidence on a given fact, as personal experiences are relevant only for purposes of interpreting the record evidence.

<u>Id.</u> at 821-22.  In this case, petitioner does not allege the jurors knew the parties involved in the case. Also, the jurors were expressly tasked with evaluating the reasonableness of petitioner's conduct and truthfulness of her testimony.  Accordingly, the exceptions noted in <u>Navarro-Garcia</u>, to the extent, if any, they reflect clearly-established federal law, are not applicable.

1    misconduct under In re Malone).

2              g.        Conclusion

3         Under clearly-established federal law, due process requires "the 'evidence developed'

4    against a defendant [to] come from the witness stand in a public courtroom where there is full

5    judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel."

6    Turner, 379 U.S. at 472-73.  The Ninth Circuit Court of Appeals has held a juror's discussion of

7    personal life experiences does not inject "extrinsic evidence" into the deliberations and thus does

8    not deprive the defendant of his or her rights under Turner.  Grotemeyer, 393 F.3d at 880.  The

9    California Court of Appeal's decision affirming petitioner's conviction was not contrary to, or an

10   unreasonable application of federal law as declared by the Supreme Court of the United States.

11   Accordingly, the Court rejects the magistrate judge's Report and denies the petition as to this claim.

12   **III.      The Foreperson's Refusal to Testify**

13        Petitioner raises two sub-claims regarding the foreperson's refusal to testify at the second

14   hearing on petitioner's motion for new trial.  First, petitioner claims the trial court violated her right

15   to due process at the first hearing on the motion for new trial by coercing the foreperson not to

16   testify.  Second, petitioner claims the trial court violated due process by permitting the foreperson

17   to invoke his Fifth Amendment right against self-incrimination as to all potential questions, rather

18   than requiring him to take the stand and assert the privilege on a question-by-question basis.

19             A.       Judicial Coercion

20        At the first hearing on the motion for new trial, the trial court immediately expressed

21   concern that the "[the foreperson] needs to be counseled.  He should have his own attorney from

22   this point forward, because [if] his assertions in his affidavit are true, he's obstructing justice,

23   should be prosecuted.  I would suggest [defense counsel] talk to him no further."  (RT at 1019.)

24   The court characterized the foreperson's declaration as "troubling and likely criminal" and told

25   defense counsel "in all seriousness, Matt, I think he does need to be advised."  (RT at 1020.)  The

26   court continued:

27             If my review of the transcript – if my recollection is accurate, and my review
              confirms that it is accurate, then on numerous occasions he was advised in a variety
28            of ways, certainly not to read any newspaper account of the case.  If in fact he does
              that during deliberations, I think he's admitted to being in contempt.  I think that
              now this attempt to somehow, like I said, inject himself into this case to a greater

                                              - 18 -                                    07cv364

1    degree than I think is either necessary or appropriate constitutes obstruction of
     justice, in my humble opinion.

2             I'm not so sure he should not be counseled before he steps foot in the
     courtroom and takes the stand.  I will require that he testify in this case.  That will be

3    an affair to remember.

4    (RT at 1021.)  Petitioner claims these statements constituted an impermissible threat to the

5    foreperson, thus depriving petitioner of her right to compulsory process.

6             1.      The Magistrate Judge's Report

7         The magistrate judge correctly identified the clearly-established federal law.  In Webb v.

8    Texas, 409 U.S. 95 (1972), the Supreme Court held a "judge's threatening remarks, directed only at

9    the single witness for the defense, effectively drove that witness off the stand, and thus deprived the

10   petitioner of due process of law under the Fourteenth Amendment."  Id. at 98.  The magistrate

11   judge concluded the state court's failure to find a deprivation of due process was not contrary to, or

12   an unreasonable application, of the principles in Webb because the foreperson was not present for

13   the court's comments, the court did not threaten prosecution, and the foreperson was represented by

14   counsel.

15            2.      Petitioner's Objections

16        Petitioner argues Webb applies because the foreperson based his decision not to testify on

17   the court's impermissible threats.  Petitioner argues the foreperson "[u]ndoubtedly" "knew of" the

18   court's remarks, even though they were not made in his presence.  (Petitioner's Objections at 5.)

19   Petitioner further argues the presence of counsel did not cure the "extensive comments and threats

20   from the trial court."  (Id. at 6.)

21            3.      Respondent's Reply

22        Respondent argues the magistrate judge persuasively distinguished Webb.  First, in this case

23   the trial court made the statements in the foreperson's absence.  Second, the trial judge did not state

24   he would "personally see" the witness indicted (Webb, 409 U.S. at 95-98) but rather expressed the

25   "humble opinion" the witness "should be prosecuted."  (RT at 1019 & 1021.)  Finally, the

26   foreperson made his decision not to testify while represented by counsel, who could have dispelled

27   any misapprehension that the judge could initiate prosecution of the foreperson.

28   //

1    4.    Analysis

2        a.    Standard of Review

3    As the magistrate judge correctly noted, petitioner did not raise this issue before the trial

4 court or on direct appeal.  She did present the issue in her petition for writ of habeas corpus to the

5 California Supreme Court, which was summarily denied.  Because no state court has "furnish[ed] a

6 basis for its reasoning," this Court must conduct an independent review of the record to determine

7 whether the denial of this claim is contrary to, or an unreasonable application of, clearly established

8 Supreme Court law.  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

9        b.    The Inapplicability of *Webb*

10    The facts in this case are quite different than those in Webb.  The warnings in Webb, made

11 to defendant's sole witness immediately prior to his scheduled testimony, were "lengthy and

12 intimidating" and the court used "unnecessarily strong terms."  409 U.S. at 97-98.  In contrast, in

13 this case the court made remarks out of the witness's presence, and the court's words were not

14 intimidating, absolute, or vindictive.  Moreover, the presence of counsel could correct any

15 misunderstanding of the Court's warning the foreperson may have had.  See United States v.

16 Santiago-Becerril, 130 F.3d 11, 25 (1st Cir. 1997) (finding the trial court's admonitions to witness,

17 although "strongly worded," did not violate defendant's right to due process because "[t]he

18 provision of counsel helped assure that [her] decision was made voluntarily, in her own interest,

19 rather than being the product of judicial coercion").  In light of the compelling factual differences

20 between the court's comments in this case and those in Webb, the denial of this claim was not

21 contrary to, or an unreasonable application of, clearly established federal law.

22    Accordingly, the Court adopts the Report, rejects petitioner's objections, and denies the

23 petition as to this sub-claim.

24    B.    Blanket Invocation of the Right Against Self-Incrimination

25    Petitioner also challenges the trial court's decision to accept the foreperson's "blanket"

26 assertion of privilege.  In petitioner's view, the court should have required the foreperson to take

27 the stand to at least testify about the conduct of the two female jurors.  Petitioner argues the

28 foreperson could have answered questions about the other jurors' conduct without incriminating

himself.

1   //
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

07cv364

1            1.      The Magistrate Judge's Report

2             The magistrate judge noted the foreperson risked charges of perjury and obstruction of

3    justice by testifying about any of the content in his declaration, and thus the trial court correctly

4    permitted the blanket assertion of privilege.  The magistrate judge also explained there is no

5    Supreme Court decision requiring the privilege to be invoked on a question-by-question basis.

6    Accordingly, the magistrate judge recommended the Court deny the petition as to this sub-claim.

7            2.      Petitioner's Objections

8            Petitioner again argues the foreperson's Fifth Amendment privilege could not have been

9    implicated by any testimony about the conduct of jurors two and nine, and thus the trial court

10   should not have accepted a blanket assertion of the privilege.  Petitioner cites United States v.

11   Vavages, 151 F.3d 1185 (9th Cir. 1998), for the proposition that a court should not approve a

12   blanket invocation of the Fifth Amendment privilege unless the witness "establishe[s] a good-faith

13   belief that her testimony might incriminate" the witness.  Id. at 1191-92.

14           3.      Respondent's Reply

15           In reply, respondent argues there is no controlling Supreme Court authority curtailing the

16   scope of a witness's assertion of the right against self-incrimination in a criminal trial.  Respondent

17   also notes any testimony by the foreperson about the conduct of other jurors would have exposed

18   the foreperson to potential prosecution for perjury.  The declarations by the four other jurors

19   conflicted substantially with the foreperson's portrayal of the conduct of jurors two and nine, and

20   the circumstances strongly suggested the foreperson was lying.  Accordingly, respondent argues the

21   foreperson could have committed perjury by testifying consistently with his declaration, or could

22   have revealed he committed perjury in his earlier sworn declaration by testifying truthfully at the

23   hearing.

24           4.      Analysis

25                   a.      Standard of Review

26           The Court also conducts an independent review of the record as to this sub-claim, which

27   was raised for the first time in petitioner's petition for writ of habeas corpus and summarily denied

28   by the California Supreme Court.

//

07cv364

b.      Lack of Clearly-Established Law

Petitioner has not cited any Supreme Court decisions holding the Fifth Amendment privilege may only be invoked on a question-by-question basis, and both the magistrate judge and this Court have been unable to find any such decisions.  There is thus no clearly-established principle which the state courts must apply in balancing a witness's right against self-incrimination and the defendant's right to due process.  Accordingly, the state court's decision was not contrary to, or an unreasonable application of, clearly established federal law.

c.      Legitimate Refusal to Testify

Moreover, the trial court's decision was consistent with the federal law applied in this Circuit.  Under United States v. Pierce, 561 F.2d 735 (9th Cir. 1982), the privilege against self-incrimination may only be "raised in response to specific questions."  Id. at 741.  A blanket assertion of privilege is permitted if the trial court, "based on its knowledge of the case and of the testimony expected from the witness . . . can conclude that the witness could legitimately refuse to answer essentially all relevant questions."  United States v. Moore, 682 F.2d 853, 856 (9th Cir. 1982) (internal citations omitted).

Petitioner incorrectly argues the foreperson could not have refused to answer questions concerning the conduct of jurors two and nine.  The trial court found "that any questions with regard to that declaration, based upon additional declarations that have been filed by a number of other jurors, may subject [the foreperson] to criminal prosecution.  And any responses he would give in conjunction with the matters he's set forth in his declaration would be subject to the claiming [sic] privilege."  (RT at 1027.)  The trial court, based on its unique knowledge of the case, did not believe the foreperson's declaration as to the conduct of other jurors and specifically noted "in my opinion if you put that foreperson on the stand and he testifies as to what went down, he's committing perjury, number one."  (RT at 1035.)  The other jurors contradicted the foreperson's declaration in many respects.  If the foreperson had been questioned about the other jurors' conduct, he would have been able to assert his right against self-incrimination and refuse to provide perjured testimony.  The "witness could legitimately refuse to answer essentially all relevant questions."  See Moore, 682 F.2d at 856 (internal citations omitted).  Accordingly, the California courts' denial of this claim was not contrary to, or an unreasonable application of, federal law.

07cv364

1    The Court therefore adopts the Report, rejects petitioner's objections, and denies the petition

2  as to this sub-claim.

3  **IV.     Unreasonable Permissive Inference Claim**

4    Petitioner also claims the trial court violated her right to due process by instructing the jury

5  with California Jury Instruction ("CALJIC") 2.50.02.[11]  The instruction allowed the jury to draw a

6  permissive inference of guilt if it believed petitioner had a propensity to commit domestic violence,

7  based on her prior incidents with Mr. Yu.  Neither party has objected to the magistrate judge's

8  recommendation the Court deny this claim.  The Court agrees the permissible inference domestic

9  violence instruction did not violate petitioner's right to due process.  Accordingly, the Court adopts

10  the magistrate judge's Report and denies the petition as to this claim.

11  **V.      Domestic Violence Propensity Claims**

12    Finally, petitioner asserts the trial court violated her due process rights by permitting the

13  introduction of evidence to show her propensity to commit domestic violence.  The Supreme Court

14  reserved decision on the issue of whether propensity evidence violates the Constitution in Estelle v.

15  McGuire, 502 U.S. 62, 74-75 (1991).  Petitioner acknowledges there is thus no clearly-established

16  federal law on this issue.  See Alberni v. McDaniel, 48 F.3d 860, 864 (9th Cir. 2006).  Petitioner

17  raises these claims in order to preserve them for further review.  The magistrate judge

18  recommended the Court deny these claims, and neither party objected to this recommendation.  The

_____

[11]The instruction read:

> If you find by a preponderance of the evidence that the defendant has committed a prior offense involving domestic violence, you may, but are not required to, infer that the defendant had a disposition to commit another offense involving domestic violence.
>
> ....
>
> If you find that the defendant had this disposition, you may, but are not required to, infer that she was likely to commit and did commit the crime for which she's accused in count 1 [attempted murder].  Now, the weight and significance of any of this evidence is for you to decide.
>
> However, evidence that the defendant committed a prior offense or offenses involving domestic violence can never be sufficient, by itself, to prove beyond a reasonable doubt that she committed the offenses charged in this case.  The weight and significance, if any, of that prior offense involving domestic violence is simply one factor that you may consider, along with all the other evidence in the case, in reaching your ultimate decision as to whether the defendant is guilty or not guilty of the crime charged in count 1.

(RT at 983-84.)

07cv364

1   Court therefore adopts the Report and denies the petition as to these claims.

2   **VI.      Evidentiary Hearing**

3          Petitioner has requested an evidentiary hearing.  Because she did not request a further

4   hearing in state court, this request must be denied.  See 28 U.S.C. § 2254(2) ("If the applicant has

5   failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an

6   evidentiary hearing on the claim."); Bragg v. Galaza, 242 F.3d 1082, 1089-90 (9th Cir. 2001).

7   **VII.     Certificate of Appealability**

8          A petitioner complaining of detention arising from state court proceedings must obtain a

9   certificate of appealability to file an appeal of the final order in a federal habeas proceeding.  28

10  U.S.C. § 2253(c)(1)(A) (2007).  The district court may issue a certificate of appealability if the

11  petitioner "has made a substantial showing of the denial of a constitutional right."  Id. § 2253(c)(2).

12  The resolution of petitioner's claims is debatable among jurists of reason.  See Lambright v.

13  Stewart, 220 F.3d 1022, 1024-25 (9th Cir. 2000).  Accordingly, the Court issues a certificate of

14  appealability as to all claims raised in the petition.

15                                         CONCLUSION

16         For the foregoing reasons, the Court denies the petition for writ of habeas corpus, adopts in

17  part and rejects in part the magistrate judge's Report, and issues a certificate of appealability as to

18  all claims.

19

20  **IT IS SO ORDERED.**

21

22  **DATED:  September 3, 2008**

23                                         _Irma E. Gonzalez_
                                           **IRMA E. GONZALEZ, Chief Judge**
24                                         **United States District Court**

25

26

27

28